**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bert Alvin WELLMAN, Jr., Defendant–Appellant.**

No. 98–5443.

United States Court of Appeals, Sixth Circuit.

Submitted July 13, 1999.

Decided Aug. 9, 1999.

Thomas L. Parker (briefed), Office of the U.S. Attorney, Memphis, Tennessee, for Plaintiff–Appellee.

Brett B. Stein (briefed), Finley & Stein, Memphis, Tennessee, for Defendant–Appellant.

Before: KENNEDY, CONTIE, and RYAN, Circuit Judges.

CONTIE, Circuit Judge.

Defendant-appellant, Bert Alvin Wellman, Jr., appeals the district court's denial of his motion to suppress evidence found in a search of his motor home after he was stopped for speeding. For the following reasons, we affirm.

## I.

This case involves a traffic stop on April 4, 1997, during which the Shelby County Sheriff's Deputy searched defendant's Southwind motor home and found approximately 941 pounds of marijuana hidden under the bed in the vehicle.

Chris M. Jones, a patrolman with the Shelby County Sheriff's Department, was on duty on April 4, 1997. He was employed as a traffic enforcement officer and as a member of the drug interdiction unit. On the day in question, Officer Jones was enforcing the traffic laws of the state of Tennessee by running radar on Interstate 240 in the Watkins Road area where the speed limit was 55 mph. At approximately 7 a.m., he clocked on the radar that the defendant herein, Bert Alvin Wellman, Jr., was going 63 mph in the 55 mph zone.

Officer Jones stopped defendant about a mile and a half further down the road. Defendant, who was driving a motor home, pulled over, exited from the left side of the motor home, and immediately walked back to the police car. Defendant's quick exit from his vehicle, instead of waiting for the officer to approach him, triggered in Officer Jones a suspicion that there may be some illegal activity such as drugs, weapons, a wanted person, or illegal immigrants hidden in the home.

Officer Jones asked defendant for his driver's license and asked him if he was aware of the speed limit on the interstate. Defendant replied that he thought the speed limit was 65 mph. Officer Jones explained to defendant that he was traveling 63 mph in a 55 mph zone. After getting defendant's driver's license, Officer Jones asked him if he and his family were on vacation, and defendant responded that he and his family were traveling to Knoxville, Tennessee to see other members of the family. Officer Jones then asked defendant to have a seat in his vehicle and told him he was going to issue him a courtesy citation for speeding. He asked for the registration papers for defendant's vehicle, and defendant responded that the registration papers were inside his motor home.

Officer Jones then got out of his car and approached the motor home to obtain the registration papers. He went to the passenger side and knocked on the door, expecting that someone would answer it, because defendant had told him that his family was traveling with him. After knocking several times and receiving no answer, Officer Jones went back to his patrol car and asked defendant if anybody was in the motor home. Defendant then stated that he was traveling alone. This change in defendant's story made Officer Jones even more suspicious that defendant had something to hide.

Officer Jones called another officer, Officer Lane, who was the canine officer for his unit. Officer Lane happened to be nearby and was able to get to Officer Jones and defendant within a few minutes. In the meantime, Officer Jones ran a driver's license check. Defendant had a Texas driver's license and Texas license plates on his car. Officer Jones also called in a registration check to see if the vehicle was

registered properly and if the tags were in order and not expired. A time lapse occurs when one calls in a driver's license or registration check, because the office has to check the computer and then call the officer on duty back over the radio. While Officer Jones was waiting for information on the registration and driver's license check and writing up the courtesy citation, Officer Lane arrived. Officer Jones asked defendant if he would consent to a search of his vehicle. At the motion to suppress hearing, Officer Jones testified that at the time he asked defendant for consent to search his vehicle, the driver's license and registration check had not been completed and that about seven or eight minutes had elapsed since the initial stop.

Defendant signed the consent to search form, which advised him of his right to refuse consent. Officer Lane detailed his drug-sniffing dog around the motor home, and the dog indicated to the presence of narcotic odor at the right rear passenger door. When Officer Jones opened the door to the motor home, he smelled the odor of raw marijuana coming from the interior of the vehicle. He and Officer Lane conducted a search and found approximately 191 bundles of raw marijuana underneath a bed and lying on each side of the bed between the wall and the bed.

At the suppression hearing, defendant gave a different rendition of the facts, indicating that he was not speeding and that he knew that he was going 55 mph in the 55 mph zone because he had seen the signs. He stated that when he passed Officer Jones' patrol car, Officer Jones would not have been able to track him on radar because there were big trucks in between them. Defendant also testified that while he was sitting in the patrol car, he attempted to get out of the car to get his registration papers. However, Officer Jones told him to stay in the patrol car. Defendant alleged that Officer Jones then went into his motor home, looked around, and returned to the patrol car to wait for Officer Lane to arrive. Defendant testi-fied that after Officer Lane arrived, both officers searched his vehicle and did not ask him to sign a consent to search form until after they had found the marijuana.

On April 11, 1997, a federal grand jury for the Western District of Tennessee returned a one-count indictment against defendant, charging him with possession with intent to distribute approximately 941 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). On June 11, 1997, defendant filed a motion to suppress evidence, alleging that the traffic stop was unlawful and that defendant's subsequent detention and the search of his motor home were also unlawful. On September 3, 1997, a magistrate judge conducted an evidentiary hearing concerning the motion to suppress, and on September 11, 1997, he issued proposed findings of facts and conclusions of law, recommending that the motion to suppress be denied. On October 21, 1997, the district court entered an order denying defendant's motion to suppress and adopting the magistrate court's report and recommendation. On October 27, 1997, defendant entered a guilty plea, reserving his right to appeal the court's ruling concerning the motion to suppress. Defendant was sentenced to a term of imprisonment of 46 months. He now brings this timely appeal.

## II.

This appeal involves a review of the district court's findings of fact and conclusions of law in denying defendant's motion to suppress evidence obtained from his vehicle after it was stopped for a traffic violation. The district court's findings of fact concerning a motion to suppress will be upheld unless they are clearly erroneous. *United States v. Duncan*, 918 F.2d 647, 650 (6th Cir.1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991). The district court's conclusions of law are reviewed *de novo.* *United States v. Bradshaw*, 102 F.3d 204, 209 (6th Cir. 1996), *cert. denied*, 520 U.S. 1178, 117 S.Ct. 1453, 137 L.Ed.2d 558 (1997). When re-

viewing a denial of a motion to suppress evidence, the appellate court must consider the evidence in the light most favorable to the government. *United States v. Erwin*, 71 F.3d 218, 221 (6th Cir.1995).

The district court found that because the police officer had probable cause to believe that a traffic violation had occurred, the stop of defendant's vehicle was lawful and did not violate the Fourth Amendment. The court found that the proof showed that Officer Jones observed defendant speeding. Because Officer Jones had probable cause to believe, based upon his own observation and a stationary radar reading, that defendant had violated the traffic laws of the state of Tennessee, the initial stop of defendant's vehicle was valid.

Defendant Wellman argues that this conclusion of the district court was erroneous because although it is true that the police can stop a motor vehicle if they have probable cause to believe that the driver of the vehicle has violated a traffic law, defendant did not exceed the speed limit, and the police were not telling the truth about the alleged traffic violation. Defendant argues that instead, the policeman who stopped him was a member of a drug interdiction unit and was merely using the alleged speeding violation as a pretext in order to search his vehicle for drugs. Thus, defendant attempts to portray the traffic stop as a subterfuge for searching his vehicle for drugs.

■ Although it is true that the officers involved were part of the interstate interdiction unit of the Shelby County Sheriff's Department and one of their functions was to catch persons with drugs on Interstate 240, it is well-settled law that if an officer has probable cause to believe that a traffic violation has occurred, his subjective intent or state of mind in taking action thereon is irrelevant. In *Whren v. United States*, 517 U.S. 806, 813–15, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court held that as long as law enforcement officers have probable cause to believe that a traffic violation has oc-

curred, the resulting stop is lawful and does not violate the Fourth Amendment irrespective of the subjective motive of the officers. The *Whren* court stated that a traffic stop is reasonable if there was probable cause for the traffic stop, and it is irrelevant what else the officer intended to investigate at the time of the stop. *Id.* See also *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993) (*en banc*), *cert. denied*, 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994).

■ Defendant also argues that Deputy Jones used a "drug courier profile" in determining whether to stop defendant and stopped him because he was driving a vehicle with Texas plates. Assuming, without deciding, that this was a consideration in the decision by Deputy Jones to stop defendant's vehicle, even if the officer making a traffic stop is motivated by a suspicion that the defendant fits into a "drug courier profile," the traffic stop is not unreasonable if probable cause for a traffic violation exists. *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996).

■ In the present case, Officer Jones testified that he observed defendant's vehicle traveling at a speed of 63 mph in a 55 mph zone. Defendant testified that he was driving 55 mph and knew that this was the speed limit. Defendant, however, admitted to misleading Officer Jones when he told him he was traveling with his family. The magistrate concluded that defendant's lie about his family called his credibility into question and credited Officer Jones' testimony, rather than defendant's. This credibility determination was not clearly erroneous. Furthermore we must consider the evidence in the light most favorable to the government. *Erwin*, 71 F.3d at 221. Therefore, we find that Officer Jones had probable cause to believe, based upon his own observation and the stationary radar reading, that defendant's vehicle had violated the traffic laws of the state of Tennessee. Because the

officer had probable cause to believe that a traffic law had been violated, the initial stop of the vehicle was valid. *Whren*, 517 U.S. at 818, 116 S.Ct. 1769.

## III.

We must next decide whether the district court erred in finding that defendant was not illegally detained beyond the scope of the traffic stop. Defendant argues that it is well-settled law that as soon as the purpose of a traffic stop has been accomplished, an officer cannot further detain the vehicle or its occupants unless facts occur which would generate reasonable suspicion to justify further detention. *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995). Defendant argues that in the present case, his response to Officer Jones' questioning about his family was insufficient to cause reasonable suspicion in the mind of a reasonable police officer that he was engaged in criminal activity. Although defendant concedes that he told Officer Jones that he was traveling with his family, he argues that he was not trying to leave the impression that his family was being taken to Knoxville by him or that they were in the motor home at the time. Defendant argues that without reasonable suspicion of criminal activity, his detention exceeded the purpose of the initial stop.

■ A traffic stop is analogous to a "Terry stop" in that, following the initial stop, the subsequent detention cannot be excessively intrusive and must be reasonably related in time to the investigation. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Palomino*, 100 F.3d at 449. To determine whether a detention is reasonable, the court should consider "whether the officer's action was justified at its inception, and whether it is reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*, citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This court has ruled that an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity "would be well within the bounds of the initial stop." *United States v. Bradshaw*, 102 F.3d at 212. Based on *Bradshaw*, we believe Officer Jones lawfully asked defendant to sit in the squad car while he wrote a courtesy citation and performed record checks of his driver's license and registration. Because the traffic stop of defendant's speeding vehicle was justified, it follows that if the detention was a reasonable length, any consent to search voluntarily given during this time would justify a search of the motor home.

■ Officer Jones testified that 15–20 minutes elapsed from the time he pulled over defendant's motor home to the time of completion of the search of the vehicle. The delay occurred because Officer Jones was waiting for the central office to provide him with information on defendant's driver's license and vehicle registration. Officer Jones testified that he began the driver's license and vehicle registration check before he asked for and received consent to search defendant's vehicle and before Officer Lane detailed his drug-sniffing dog around the mobile home. He testified that the driver's license and vehicle registration check had not been completed at the time of the search. Although defendant testified that Officer Jones went into the motor home and looked around before he asked for consent to search and before Officer Lane detailed his dog, we are bound by the district court's credibility determination in favor of Officer Jones. *Erwin*, 71 F.3d at 221.

■ Defendant misreads the issue when he states that his conversation with Officer Jones did not give Jones reasonable suspicion to search his vehicle, because defendant gave consent to search his motor home. When seeking to justify a search based on consent, the government has the burden of showing by a preponder-

ance of the evidence that the consent was freely and voluntarily given and was not the result of coercion, duress, or submission to a claim of authority. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The voluntariness of the consent is determined by the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In the present case, Officer Jones testified that while waiting for a response on his inquiry about defendant's drivers license and registration, he asked defendant for his consent to allow officers to search his motor home, and defendant voluntarily signed the form.

There is no evidence that defendant's consent was not voluntary. The magistrate judge found that defendant had admitted that he was familiar with law enforcement officers on the interstate system since he was an over-the-road truck driver and had been stopped on a number of occasions. The magistrate judge found that defendant appeared to be very intelligent and literate and did not seem to have the personality that would allow him to be intimidated by law enforcement officers. The magistrate judge found that defendant had not been truthful with Officer Jones about whether his family was traveling with him, which undermined his credibility in regard to other matters. These findings are not clearly erroneous. In considering the evidence in the light most favorable to the government, we find that the magistrate logically concluded that in the totality of the circumstances, the proof showed that defendant voluntarily consented to a search of his vehicle within the time frame for a reasonable detention for a traffic stop, requiring the need for a driver's license and registration check. Officer Jones did not unlawfully detain defendant prior to obtaining consent to search and prior to the dog's positive alert to the scent of narcotics. Therefore, the district court's ruling that the motion to suppress should be denied is hereby **AFFIRMED.**