UNITED STATES of America, Plaintiff,

v.

Todd B. OLIVER, Defendant.

No. CR–1–00–093–ALL.

United States District Court, S.D. Ohio, Western Division.

Dec. 28, 2000.

Timothy D. Oakley, United States Attorney's Office, Cincinnati, OH, for U.S.

Bryan R. Perkins, Cincinnati, OH, for Todd Blake Oliver, defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Todd B. Oliver's Motion for a Bill of Particulars (doc. 15); the Government's Response (doc. 22); Defendant's Motion for the Governmental Disclosure of Evidence (doc. 16); the Government's Response (doc. 24); Defendant's Motion for Notice of its Intention to Use Evidence (doc. 17); the Government's Response (doc. 23); Defendant's Motion to Suppress (doc. 19); and the Government's Response (doc. 25).

In addition, the Court held a hearing in this matter on December 26, 2000 (doc. 26).

## BACKGROUND

In an Indictment dated October 18, 2000, the Government charged Defendant Todd B. Oliver, having allegedly been previously convicted at least three times in the Hamilton County, Ohio Court of Common Pleas for a violent felony or a serious drug trafficking offense or both, did knowingly possess a firearm on August 5, 2000 in the Southern District of Ohio, which firearm having been shipped in interstate commerce, in violation of Title 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (doc. 10).

Thereafter, a Federal Warrant for Defendant's Arrest was issued by the Magistrate Judge on November 3, 2000 (doc. 14). At his Arraignment, Defendant pleaded not guilty to the charges in the Indictment (doc. 12), and is presently scheduled for a two-day, jury trial on January 2, 2001 (doc. 18).

Defendant has subsequently filed several pretrial motions in this matter (docs. 15–17 & 19), followed by the Government's Responses (docs.22–25). In addition, the Court held an evidentiary hearing in this matter on December 26, 2000 (doc. 26). This matter is now ripe for the Court's determination.

## DISCUSSION

### A. *Defendant's Motion for a Bill of Particulars (doc. 15).*

■ On November 8, 2000, Defendant filed a Motion for a Bill of Particulars with the Government, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure (doc. 15). The purposes of a bill of particulars are threefold: (1) to insure that the defendant is able to understand the nature of the charges against him with sufficient precision so that he may adequately prepare for trial; (2) to avoid or minimize the danger of unfair surprise at the time of trial; and (3) to enable the defendant to plead the defense of double jeopardy if he is later charged with the same offense by the government. *United States v. Birmley,* 529 F.2d 103, 103 (6th Cir.1976).

Having reviewed this matter, the Court finds that the Indictment meets the requirements of *Birmley* in that the Indictment specifies the date of the offense, the nature of the offense, and the prior offenses that will be placed into evidence (*see* doc. 10). Therefore, for the reasons stated in the Government's Response (*see* doc. 22), Defendant's Motion for a Bill of Particulars is DENIED at this time (doc. 15).

### B. *Defendant's Motion for Governmental Disclosure (doc. 16).*

Also on November 8, 2000, Defendant filed a Motion for Governmental Disclosure of Evidence requesting that the Government provide to Defendant an opportunity for discovery, inspection, and copies of a number of evidentiary items that are allegedly in the control, custody or possession of the Government, pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure (doc. 16). In Response, the Government asserts that it has already provided the required discovery materials to Defendants, in compliance with Rule 16(a)(1)(A)–(D) of the Federal Rules of Criminal Procedure (doc. 24). Specifically, in its Response, the Government provided a detailed list of the relevant discovery materials that were allegedly already given to Defendant, and the Government further contends that, "[t]o the extent that defendant should file a request that exceeds the parameters of the Rule, it is opposed" (*Id.*).

Having reviewed this matter, the Court finds that the Government is in compliance with the requirements of Rule 16, and, therefore, Defendant's Motion for Governmental Disclosure is hereby DENIED at this time (doc. 16) for the reasons stated in the Government's Response brief (*see* doc. 24).

### C. *Defendant's Motion for Notice of Its Intention (doc. 17).*

In addition, Defendant filed a Motion for Notice of the Government's Intention to Use Evidence Pursuant to Federal Criminal Rule 12(d)(2) requesting that the Government provide to Defendant its evidence-in-chief that will be presented at trial, so that Defendant may raise objections prior to trial, under Rule 12(b) of the Federal Rules of Criminal Procedure (doc. 17). On December 6, 2000, the Government submitted its Response, specifically outlining what evidence it intends to use at trial during the Government's case-in-chief (doc. 23).

Having reviewed this matter, the Court finds that the Government's Response meets the requirements of Rule 12 of the Federal Rules of Criminal Procedure, and, thus, Defendant's Motion for Notice of Intention is hereby DENIED at this time (doc. 17) for the reasons stated in the Government's Response brief (*see* doc. 23).

### D. *Defendant's Motion to Suppress (doc. 19).*

On November 13, 2000, Defendant Todd Oliver filed a Motion to Suppress the firearm, a Bryco, Model 25, .25 caliber, semiautomatic handgun, serial number 241745, that was allegedly discovered in "plain view" in his car by a City of Cincinnati Police Officer, Ryan Smith, during a rou-

tine traffic stop in the early morning hours of August 5, 2000 (doc. 19). In addition, Defendant also requests this Court to suppress certain allegedly incriminating statements that were made by Defendant to the police officer in violation of his Fifth Amendment right to silence and in violation of his right to have legal counsel present during any post-custodial questioning (doc. 19).

In its Response, the Government asserts that the firearm that was allegedly seized from Defendant's automobile as well as the subsequent incriminating statements were lawful, admissible, and were in compliance with the mandates of the Fourth and Fifth Amendments to the United States Constitution (doc. 25).

In addition, the Court held a hearing in this matter on December 26, 2000 in which only one witness testified about his recollections of the traffic stop of Defendant during the early morning hours of August 5, 2000. The following facts, though disputed in several key respects by Defendant, were derived from the Indictment, the Parties' briefs, and the testimony of Cincinnati Police Officer Ryan Smith.

At approximately 3:00 A.M. on August 5, 2000, Cincinnati Police Officer Ryan Smith was in the middle of his 11:00 P.M. to 7:00 A.M. shift driving westbound on Calhoun Street in Cincinnati when he noticed the movements of the automobile that was just ahead of him. According to Officer Smith, the Cadillac was driving very erratically, making multiple and sudden lane changes without signaling proceeding westbound on Calhoun Street. Officer Smith followed the Cadillac as it proceeded north on Clifton Avenue onto Martin Luther King, Jr. Drive then turning on Vine Street. Shortly thereafter, Officer Smith turned on his flashing lights in an effort to alert the vehicle to his presence, but the Cadillac continued without stopping or pulling over, however, the driver did decrease his rate of speed significantly. This slow speed pursuit continued for another block on Vine Street until the driver turned onto

Goodman Street and stopped near the intersection with Vine Street. Officer Smith testified that he was not aware of the sex or race of the driver until the driver made his slow speed turn onto Goodman Street.

At the time the Cadillac pulled over, Officer Smith called for backup because he felt apprehensive about making the stop alone since the driver did not immediately stop when Officer Ryan turned on his emergency lights, the Officer was alone, and the streets were nearly deserted. Cincinnati Police Sergeant Hassert arrived on the scene within minutes of Officer Ryan's call.

Officer Smith then approached the Cadillac on the passenger side with his flashlight in hand and proceeded to make a quick observation of the exterior and interior of the car and determined that the driver was the sole occupant of the car. When approached, the driver was an African–American male, polite and responsive, but Officer Ryan testified that when he first approached the driver, he immediately smelled the presence of burning or burnt marihuana (i.e., a "roach" or "joint") and alcohol coming either from the driver or from the interior of the vehicle. Officer Smith testified that the driver did not appear to be intoxicated during his initial observation, but he could not be sure. The driver stated that his name was Todd Blake Oliver.

When Mr. Oliver was asked by Officer Smith for his license, he informed the officer that his license had been suspended but he did give Officer Smith what appeared to be documents showing that Mr. Oliver was allowed to drive his vehicle with some restrictions. According to the testimony, Mr. Oliver was only allowed to drive to and from work during daytime hours. When asked by Officer Smith where was he coming from, Mr. Oliver stated that he was coming from a friend's house and was headed home. Officer Smith stated that he concluded his initial interview of Mr. Oliver by asking him about the smell of

burnt marijuana, alcohol, and, further inquired as to the presence of any drugs in his vehicle. Mr. Oliver reacted by first smiling, then turning away, and finally offering no response to Officer Smith's inquiry.

Officer Smith then asked Mr. Oliver to step out of the car to the rear of the vehicle in order to be given a field sobriety test. The driver side door to the Cadillac was left ajar when Mr. Oliver exited the vehicle. After Officer Smith and Sergeant Hassert administered the field sobriety test, it was determined that Mr. Oliver did not appear to be driving under the influence and he continued to be cooperative and polite with the officers. Immediately thereafter, Officer Smith made another more complete visual observation of the interior of the vehicle in order to determine if drugs or alcohol were there. At this time, Mr. Oliver remained with Sergeant Hassert during Officer Smith's visual search of the car.

Using his flashlight, Officer Smith testified that, while he remained outside of the vehicle, he first visually swept the Cadillac's console, then the ashtray, then front seats, and that is when he first saw what he then believed to be an automatic handgun lodged between the seat cushions in "plain view." Only a very small portion of the handgun could be viewed from the window, but Officer Smith testified that it was enough for him to be certain that it was a gun of some kind. No drugs or alcohol was found in the car. Officer Smith testified that he never entered the interior of the Cadillac in order to conduct his visual flashlight search of its interior and that the automatic weapon was in "plain view."

Immediately thereafter, Officer Smith informed Sergeant Hassert of what he found and they proceeded to inform Mr. Oliver that he was being placed under arrest due to his possession of a concealed weapon that was found in his vehicle. Next, Mr. Oliver was frisked and was found to have a small "baggie" of marijuana on his person and was given his *Miranda* rights by Officer Smith which he read verbatim from his notepad. Officer Smith stated that when asked whether he understood his rights to remain silence and for legal counsel, Mr. Oliver answered affirmatively. Mr. Oliver was then placed in the police cruiser where Officer Smith proceeded to question him alone.

According to the testimony, when asked about the ownership of the handgun, Mr. Oliver admitted ownership of the handgun and further stated that the handgun had been purchased by him and an unnamed girlfriend from an unnamed street peddler sometime earlier that year, in order to be used for his "self-protection."

At that time, the officers proceeded to take several photographs of the interior of the vehicle and the exact location of the handgun when discovered by Officer Smith. The first photograph presented during the hearing was Exhibit # 2, displaying the front passenger interior, but the firearm cannot be seen from that particular angle. The second photograph presented was Exhibit # 3, displaying a close-up, overhead shot of the firearm tucked in between the two front car seats. According to Officer Smith, the weapon was not moved in any way by the officers on the scene until after the evidentiary photographs were made, and then they proceeded to make a custodial search of the entire vehicle.

During closing arguments, Counsel for Defendant raised several issues in regards to alleged inconsistencies in Officer Smith's testimony. First, Defendant disputes the fact that he was driving erratically or recklessly during the early morning hours of August 5, 2000, and, therefore, Officer Smith did not have the reasonable suspicion or probable cause necessary to pull him over to question him. Secondly, Defendant indirectly asserts that, Officer Smith first noticed that he was an African–American male driving alone in the early morning hours,

and that was the true reason for the traffic stop. Thirdly, since there never was any alcohol or drugs found in the Cadillac, even after a thorough post-custodial search of the vehicle, Officer Smith's testimony of the odor of drugs and alcohol should be viewed with suspicion, and, thus, there was no need to perform the field sobriety tests on him, recheck his car for drugs, or further detain him. In addition, Defendant argues that since Exhibit # 2, the photographic exhibit taken from the outside of the car, could not visualize the handgun in "plain view," how could Officer Smith visually discover it in "plain view," unless he actually found the gun while physically searching the interior of the vehicle.

After having an opportunity to review the complete record, the testimony and the credibility of the Cincinnati police officer in question as well as the exhibits presented, the Court issued its ruling on this Motion from the Bench during the hearing, DENYING Defendant's Motion to Dismiss (doc. 19).

### 1. *The Police Officer's Stop, Detention, and Search.*

The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The controlling standard of the Fourth Amendment is reasonableness. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("stating that a nonconsensual search, by the police of private property, is *per se* unreasonable unless it has been authorized by a valid search warrant, subject to only a few specifically established and well-delineated exceptions.").

In *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Court explained the duties of a suspicious officer:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry [v. Ohio]* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams*, 407 U.S. at 145–46, 92 S.Ct. 1921 (internal citations omitted); *see also Watkins v. City of Southfield*, 221 F.3d 883, 888 (6th Cir.2000).

■ To invoke the "plain view" doctrine, the evidence must be: (1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer legally located in a place from where the object could be seen; and (4) seized by an officer who has a lawful right of access to the object itself. *United States v. Roark*, 36 F.3d 14, 17 (6th Cir.1994) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

■ Finally, it is important to note that, a court reviewing a defendant's motion to suppress must be viewed in a light most favorable to the government. *United States v. Wellman*, 185 F.3d 651, 654–55 (6th Cir.1999); *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.1992). Having reviewed this matter in a light most favorable to the Government, the Court finds that the evidence adduced at the December 26, 2000 hearing supports the Government's view of the facts for the reasons placed in the record by the Court

and as stated in the Government's Response brief (doc. 25).

Specifically, the Court makes the following findings. First, after listening to Officer Smith's testimony and his demeanor, we find his testimony as to his reasonable suspicions and/or probable cause to initially stop, pull over, and question Mr. Oliver to be credible and consistent with the fact that it is logical, reasonable, and credible to immediately call for backup to assist him in pulling over a driver, who was operating his car erratically, on a nearly deserted street, in the early morning hours, and who was not pulling over when first notified of the officer's presence. Sergeant Hassert's arrival gives credence to Officer Smith's testimony that something about Mr. Oliver's driving was enough to cause Officer Smith concern.

Secondly, Officer Smith testified that only after he noticed the reckless driving, did he turn on his emergency lights, and, furthermore, only after the slow-speed chase was well in progress, did he then recognize the driver to be an African-American male. We find Officer Smith's testimony on this point to be credible, consistent, and not disputed by the evidence.

■ Thirdly, when a police officer makes a traffic stop of an erratic or reckless driver, smells alcohol or drugs on him or the interior of the vehicle and the driver provides the officer with evasive or suspicious responses to his inquiries, the fact that the officer on the scene performs a field sobriety test of the driver and makes a further visual inspection of the car does not offend the Constitution in any way.

■ In addition, the Court had an opportunity to view Exhibit # 2 and evaluate the credibility of the Officer Smith, as well as the complete record before us. While it is true that Exhibit # 2, which was taken from the same position where Officer Smith visualized the handgun in "plain view," we do not find this to be inconsistent with the evidence before us. It is likely that Officer Smith discovered the weapon while viewing the interior from another angle, another position, with a more complete view of the interior, than that shown in Exhibit # 2, while standing outside of the car. The Court finds it important to note that the testimony at the hearing mentioned the fact that, once Mr. Oliver was removed from the vehicle, the car door was left ajar, which could have provided the angle or position needed by Officer Smith to observe the weapon in "plain view" while remaining outside of the vehicle. Alternatively, even if the Court accepted Defendant's premise that Officer Smith discovered the weapon when he was physically searching the interior of the vehicle for drugs or alcohol, we, nonetheless, find that there was sufficient probable cause for Officer Smith to perform a physical search of Defendant's vehicle for drugs, and, sometime during the course of that search, Officer Smith discovered the weapon in question.

Therefore, the Court concludes that Defendant's Motion to Suppress the firearm found in his vehicle by a City of Cincinnati police officer during the early morning hours of August 25, 2000 is hereby DENIED, and is found by this Court to be admissible evidence at the January 2, 2001 trial against Defendant Todd B. Oliver.

### 2. Unlawfully Obtained Statements

■ The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." Consistent with this right against self-incrimination, the United States Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny of cases, held that suspects cannot be subjected to a custodial interrogation until they have been advised of their constitutional right to remain silent and be provided with the right to legal counsel.

In order to encourage compliance with this rule of law, incriminating statements elicited from suspects in custody cannot be

502

admitted at trial unless the suspect was first advised of his or her *Miranda* rights. *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

Defendant argues that either he was not given his *Miranda* rights or that he did not specifically consent to being questioned without his attorney present, and, therefore, his alleged admission of how he purchased the firearm or his ownership of it is inadmissible (doc. 19).

A court reviewing a defendant's motion to suppress must be viewed in a light most favorable to the government. *United States v. Wellman,* 185 F.3d 651, 655 (6th Cir.1999); *United States v. Williams,* 962 F.2d 1218, 1221 (6th Cir.1992). Having reviewed this matter in a light most favorable to the Government, the Court finds that the evidence adduced at the December 26, 2000 suppression hearing supports the Government's view of the facts for the reasons placed in the record by the Court and as stated in the Government's Response brief (doc. 25).

Specifically, while we agree with Defendant in that "silence does not mean consent," however, according to Officer Smith's testimony, when he read Defendant his *Miranda* rights, Defendant stated that he understood them. Then the questioning proceeded. At that time, having admitted that he understood his constitutional rights to remain silent and to legal counsel, we believe that Officer Smith complied with the constitutional mandates of *Miranda,* and, at that point in time, it was up to Defendant to invoke those rights by either continued silence, advising that he did not understand them, requesting counsel, or indicating his desire to end the questioning that was in progress. Thus, we find the allegedly incriminating statements made by Defendant to Officer Smith to be voluntary, knowing, and admissible.

In conclusion, Defendant's Motion to Suppress the allegedly incriminating statements made subsequently to his arrest by a City of Cincinnati police officer during the early morning hours of August 25,

2000 is hereby DENIED (doc. 19), and is found by this Court to be considered admissible evidence at the January 2, 2001 trial against Defendant Todd B. Oliver for the reasons stated in the Government's Response brief.

## CONCLUSION

Accordingly, for the reasons set forth above, the Court hereby DENIES the following pretrial motions: (1) Defendant's Motion for a Bill of Particulars (doc. 15); (2) Defendant's Motion for Disclosure of Evidence (doc. 16); (3) Defendant's Motion for Notice of Its Intention (doc. 17); and (4) Defendant's Motion to Suppress (doc. 19).

Accordingly, a two-day, jury trial remains SCHEDULED for this matter on Tuesday, January 2, 2001, at 9:00 A.M.

SO ORDERED.