This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Ganesh Mootoosammy, appeals from the judgment entered against him in the Medina County Court of Common Pleas, which convicted him of possession of crack cocaine. This Court affirms.
 I.
On May 16, 2000, Mr. Mootoosammy was driving a rented minivan northbound on Interstate 71 in Medina County. He was accompanied by an acquaintance Raishod Hampton and Mr. Hampton's two-year-old daughter. The group was en route from Columbus to Akron. Mr. Mootoosammy was a resident of California. Trooper Shirkey of the Ohio State Highway Patrol was monitoring traffic on the highway at approximately 1:20 p.m., when he clocked Mr. Mootoosammy's vehicle travelling in the left lane of traffic at 71 m.p.h. in a 65 m.p.h. zone. Trooper Shirkey also noted that when Mr. Mootoosammy passed him, the vehicle slowed down and pulled behind another vehicle, but was following too close.
At 1:23 p.m. Trooper Shirkey pursued the minivan and pulled it over. At this time, the trooper noted that the young child was not properly restrained. The trooper asked Mr. Mootoosammy to accompany him to the patrol car, where he inquired of Mr. Mootoosammy about the purpose of his trip and his destination. Mr. Mootoosammy stated that he was going to Akron to visit a sick relative. Mr. Mootoosammy described his companion as his "half-brother."
The trooper obtained Mr. Mootoosammy's California driver's license and ran a LEADS check. While waiting for the LEADS results, the trooper separately spoke to Mr. Hampton, asking him about the purpose for his trip and his destination. Mr. Hampton stated that he was going to Akron to drop off his daughter at her mother's house. Mr. Hampton described Mr. Mootoosammy as a friend. The trooper advised Mr. Hampton that the child was not properly restrained in a safety seat. When the trooper told Mr. Hampton he would only issue a warning for this infraction, rather than a ticket, Mr. Hampton became overly polite to the trooper.
At this point, the trooper believed that the two men may be engaging in illegal drug activity. The trooper's suspicion was based upon: (1) the fact that Mr. Mootoosammy was from California, a source state, (2) Mr. Mootoosammy was driving a rental car, which is often used to transport drugs, (3) the two men had offered different reasons for their trip, and (4) Mr. Hampton was extremely polite after receiving only a warning rather than a ticket on the child restraint violation. On this suspicion, while still writing tickets for the moving violations, Trooper Shirkey called in a canine unit to check the vehicle for drugs. The trooper also advised Mr. Mootoosammy of his right to remain silent, pursuant to Miranda v. Arizona (1966), 384 U.S. 436,16 L.Ed.2d 694. Approximately fifteen minutes had elapsed from the time of the initial stop.
Ten minutes after the trooper called for it, the canine unit arrived. The dog sniffed the vehicle and alerted the officer to the presence of illicit drugs. Upon opening the vehicle, the officer discovered two bags within it. One duffel bag contained an electronic scale of the type often used to measure illicit drugs. The other bag contained two packages of a white substance, which was later determined to be cocaine. The cocaine weighed almost one pound. It was determined that the duffel bag that contained the cocaine belonged to Mr. Mootoosammy.
Mr. Mootoosammy was indicted on one count of possession of crack cocaine, in violation of R.C. 2925.11(A) and (C)(4)(f), a first-degree felony, along with a major drug offender specification. Mr. Mootoosammy filed a motion to suppress the evidence obtained pursuant to the stop and warrantless search. After a hearing on the suppression motion, the court denied the motion and the case proceeded to trial. The jury returned guilty verdicts on both the offense and the specification, and the court sentenced Mr. Mootoosammy to ten years on the drug offense and four years on the major drug offender specification, with the terms to be served consecutively.
Mr. Mootoosammy filed the instant appeal, assigning one error.
 II. ASSIGNMENT OF ERROR The trial court erred when it denied the Defendant-Appellant's Motion to Suppress in violation of his right against unreasonable search and seizure as guaranteed by the Fourth Amendment [to] the United States Constitution and Article I, Section 14 of the Ohio Constitution.
Mr. Mootoosammy asserts that because the evidence against him was obtained pursuant to a warrantless search, it violated his constitutional rights as guaranteed by the Fourth Amendment to the United States Constitution, which prohibits unreasonable search and seizure. The provisions of Article I, Section 14 of the Ohio Constitution also guarantees such protection in a manner "`coextensive with that of the Fourth Amendment.'" (Citation omitted.) State v. Robinette (1997), 80 Ohio St.3d 234, 239. On this basis, Mr. Mootoosammy argues that the evidence obtained pursuant to the warrantless search must be suppressed. See Mappv. Ohio (1961), 367 U.S. 643, 6 L.Ed.2d 1081.
When an appellate court reviews an order relative to the suppression of evidence, the reviewing court uses a de novo
standard of review. State v. Bing (1999), 134 Ohio App.3d 444,448, citing Ornelas v. United States (1996), 517 U.S. 690, 699,134 L.Ed.2d 911, 920. However, the review of the facts looks only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. Id. Thus, our duty is to determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994), 95 Ohio App.3d 93,96.
In the instant case, Mr. Mootoosammy argues that he was stopped initially because he fit a drug trafficker profile, without any individualized reasonable, articulable suspicion of criminal activity. However, the facts do not bear this out. The trooper had properly stopped the minivan because of the trooper's observation of traffic violations justifying detention and the issuance of citations. The United States Supreme Court has held that a traffic stop is lawful, regardless of an officer's motives in stopping a vehicle, so long as a reasonable officer could stop the vehicle for a traffic violation. Whren v. United States
(1996), 517 U.S. 806, 809, 813, 135 L.Ed.2d 89, 95, 98. We find meritless Mr. Mootoosammy's assertion that the investigation was improper because the trooper lacked a reasonable, articulable suspicion of drug possession, pursuant to Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889. The trooper had observed two violations of traffic laws by the driver of the minivan. Thus, the initial stop was constitutional.
If during the course of a legal detention a police officer discovers further incriminating evidence, that evidence is legal, pursuant to the initial legal stop. In a case involving similar facts, this Court has held that:
 if a vehicle is lawfully detained, an officer does not need a reasonable suspicion of drug-related activity in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle. Accordingly, once [defendant] was lawfully detained for the traffic violation, [the trooper] did not need a reasonable suspicion of drug-related activity in order to request that [the canine officer] bring his drug dog to the scene. * * * The pivotal issue then is not why the troopers conducted the dog sniff but whether they conducted it while [the defendant] was lawfully detained.
State v. Carlson (1995), 102 Ohio App.3d 585, 593-594. Following the initial stop any subsequent detention must be reasonably related in time to the investigation. United States v. Wellman
(C.A.6, 1999), 185 F.3d 651, 656. An officer can lawfully detain the driver of a vehicle until after the officer has finished checking the detainee's record and issuing a citation.
However, if the initial lawful detention has ceased, any continued search or investigation must be based on articulable suspicion of illegal activity beyond that of the initial detention. The Ohio Supreme Court has held that
 [w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.
Robinette, 80 Ohio St.3d at paragraph one of the syllabus. Furthermore, even if the traffic detention was ongoing, the duration of the detention must be reasonably related to the need to process the traffic investigation. See Florida v. Royer
(1983), 460 U.S. 491, 500, 75 L.Ed.2d 229, 238. Courts have held that detentions as long as fifteen to twenty minutes are reasonable. See Wellman, 185 F.3d at 656.
In the instant case, the officer called the canine unit only fifteen minutes after initiating the stop, and the unit arrived within twenty-five minutes of the initial stop. This is not an unreasonably long duration to conduct a traffic investigation.
Assuming, without deciding, that the detention had terminated, or should have terminated prior to the call for the canine unit, the trooper here met the burden imposed by Terry v.Ohio to provide a reasonable, articulable suspicion of criminal activity justifying an ongoing investigatory stop and interrogation. Trooper Shirkey stated why he suspected that the detainees here were involved in drug-related activity. First, the two adult passengers gave different stories about their relationship and about the purpose of their trip. Second, the driver was from California, which is a source state for illegal drugs. Third, the car he was driving was a rental car, which is the type of vehicle often used for transporting illegal drugs. Finally, when Mr. Hampton was told that he would merely receive a warning about the child restraint violation, he was overly cooperative and friendly with the trooper. We find that these facts and inferences constituted "articulable facts giving rise to a suspicion of some illegal activity[.]" Robinette, 80 Ohio St.3d at paragraph one of the syllabus. Once the officer had a reasonable, articulable suspicion of criminal activity, namely drug possession, the officer had the right to continue the detention of Mr. Mootoosammy to conduct a search. Id.
This Court finds that the facts before the trial court, along with the reasonable inferences therefrom, met the requisite legal standard to support the trial court's conclusion that the evidence sought to be suppressed was legally obtained. The evidence was not obtained in violation of Mr. Mootoosammy's constitutional rights and therefore was admissible at trial.
Mr. Mootoosammy's assignment of error is not well-taken, and it is overruled.
 III.
Having overruled the assignment of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ______________________ WILLIAM G. BATCHELDER
BAIRD, J., SLABY, J. CONCUR.