**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0049n.06

No. 11-5288

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 09, 2013*
DEBORAH S. HUNT, Clerk

United States of America,           )
                                    )
    Plaintiff-Appellee,             )        ON  APPEAL  FROM  THE
                                    )        UNITED  STATES  DISTRICT
             v.                    )        COURT  FOR  THE  EASTERN
                                    )        DISTRICT OF TENNESSEE
Jackie Campbell,                    )
                                    )
    Defendant-Appellant.            )
                                    )

BEFORE: KEITH, CLAY, and ROGERS, Circuit Judges.

    ROGERS, Circuit Judge.  On September 27, 2010, Jackie Campbell pled guilty in federal district court to possession with intent to distribute cocaine base. The district court sentenced him to a pre-Fair-Sentencing-Act statutory minimum sentence of 240 months of incarceration, followed by 10 years' supervised release.  Campbell reserved his right to appeal the denial of a motion to suppress the cocaine base found in his vehicle, and he now brings that appeal, arguing that the officers lacked reasonable suspicion to search the car.  That argument is without merit.  However, as the Government agrees, a remand is required because the lowered minimum sentences under the Fair Sentencing Act ("FSA") should apply to him.

    On January 20, 2010, as Campbell drove from Atlanta to West Virginia, he was pulled over for speeding by  Chattanooga Police Officer Jason Duggan.  The officer noticed a strong smell of air freshener in the vehicle, and when he commented about the smell, Campbell lowered the rear

windows. Although Campbell had his registration paperwork ready when the officer asked for it, Officer Duggan testified that Campbell's hands were shaking and that he was "patting his legs very vigorously." R.55-10, PageID #220. After Campbell handed over his paperwork, Officer Duggan called the Blue Lightning Operations Center ("BLOC"), a service that conducts a more complete records check than the Chattanooga police dispatcher is able to provide. While awaiting a response from BLOC, Officer Duggan began writing a warning citation for Campbell.

After a short wait, BLOC called Officer Duggan to report that Campbell had previously fled the scene of a traffic stop during which officers found several pounds of marijuana, and that on that occasion Campbell told officers that he was driving from Atlanta to West Virginia. Officer Duggan called for backup and, as the backup officer arrived, BLOC again called to report that, while Campbell's license was valid and there were no outstanding arrest warrants, Campbell had a significant drug- and weapons-related criminal history in three states.

By this time, Officer Duggan had become suspicious of Campbell and wanted to "take his time and go through this thoroughly." R.55-24, 59–60, PageID #234, 269–70. His suspicions were raised by the strong odor of the air fresheners, the fact that Campbell immediately rolled down his windows in response to the officer's comments about the smell, the information from BLOC, the fact that Campbell was driving along a route where he had previously trafficked drugs, and Campbell's visible indications of nervousness. Duggan also thought it was unusual that Campbell asked him what county they were in and what the name of a nearby mall was; the officer was concerned that Campbell was asking the questions in case he decided to flee the scene. Officer Duggan asked

Campbell if he was transporting drugs, weapons, large amounts of cash, or other contraband. He also asked to search the vehicle. Campbell asked if he could refuse consent, and when he learned he could refuse, he denied the officer permission to search the car.

While the backup officer finished filling out the citation, Officer Duggan deployed a drug-sniffing dog near the car. The dog signaled that there were narcotics near the driver's and front passenger's doors of the car. Officer Duggan searched the car based on the dog's signals and recovered the narcotics from inside the vehicle. Roughly fifteen minutes passed from the time Officer Duggan stopped the defendant for speeding and the time the dog signaled the presence of drugs in the car.

Campbell moved to suppress the evidence seized from the car and the subsequent inculpatory statements he made after being informed of his *Miranda* rights. The magistrate judge concluded that the traffic stop was not unreasonably prolonged and that the use of the canine was proper. The magistrate ruled that the second BLOC report provided the officer with reasonable suspicion to continue the stop when the officer considered it alongside the additional reasons he cited for being suspicious of Campbell. The district court reviewed the magistrate's legal conclusions *de novo* and denied the suppression motion.

At sentencing, the court rejected Campbell's claim that the FSA applied to him. The court determined that since the offense preceded the enactment of the FSA, Campbell remained subject to the twenty-year mandatory minimum sentence in effect at the time of the offense. Campbell was sentenced to 240 months' incarceration and 10 years' supervised release.

Campbell's argument that the evidence found in his vehicle should be suppressed fails because the duration and scope of the stop were consistent with fulfilling the purposes of the stop and pursuing the officer's reasonable suspicions as they developed. Officer Duggan properly stopped Campbell for speeding and, while pursuing the purposes of the traffic stop, observed and learned several things that led to reasonable suspicion of additional drug-trafficking activity. The magistrate judge and the district court found that it was difficult to identify exactly when the purposes of the traffic stop had been accomplished. Although the records check was completed at around 9:17, the backup officer had not yet completed the citation, and Campbell alleged that the officers had produced an artificial delay in the citation process. However, consistent with the district court's analysis, even if we accepted Campbell's argument that the duration of the stop extended beyond the time necessary to resolve the traffic violation, the totality of the circumstances provided Officer Duggan with reasonable suspicion justifying an extended investigation for criminal wrongdoing.

On appeal from the denial of a motion to suppress, this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). The evidence must be considered in the light most favorable to the United States. *See United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006). If the district court's conclusion can be justified for any reason, this court must affirm the denial of the motion. *United States v. Kincaide*, 145 F.3d 771, 779 (6th Cir. 1998).

Campbell argues that Officer Duggan improperly extended the duration of the stop and that any evidence discovered during this extended period should be suppressed. Campbell has not provided sufficient evidence to support the conclusion that the duration of the stop was excessive. Campbell agrees that the stop was diligently pursued until at least 9:17 p.m., when BLOC called Officer Duggan with the results of the record check. However, Officer Duggan and the backup officer had yet to complete the purpose of the stop: writing a citation for speeding.

The Supreme Court has stated categorically that the use of dogs during routine traffic stops does not infringe on one's constitutionally protected privacy interests. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). In that case, the Supreme Court, "proceed[ing] on the assumption that the officer conducting the dog sniff had no information about [defendant] except that he had been stopped for speeding," *id.* at 407, held that the use of a dog sniff on the exterior of the defendant's car, "while he was lawfully seized for a traffic violation," *id.* at 409, was not a search within the meaning of the Fourth Amendment. Therefore Campbell's only avenue for suppression is to argue that the officer prolonged the traffic stop in order to use the dog. In other words, because the dog sniff was permissible so long as he was lawfully seized, he can only prevail if he shows that the officer no longer had reason to keep him where he was. *See id.* at 407 ("[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."); *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Caballes*). "[A] stop must last no longer than is necessary to effectuate the purpose of the stop . . . [and] the investigative methods employed should be the least intrusive means reasonably

available to verify or dispel the officer's suspicion in a short period of time." *United States v. Everett*, 601 F.3d 484, 488–89 (6th Cir. 2010) (internal quotations and citations omitted). It is well-settled that "an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation." *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999). Absent reasonable suspicion of criminal activity, an officer may not continue to detain the driver after the purpose of the traffic stop has been completed. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

Accordingly, Campbell must show that the traffic stop did not comply with the standard for temporary detention as declared in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Everett*, 601 F.3d at 488 (citing *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) for the proposition that *Terry* governs the scope of police conduct during a traffic stop). Campbell cannot make such a showing. While under *Terry* and its descendant cases, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," *Florida v. Royer*, 460 U.S. 491, 500 (1983), "an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity 'would be well within the bounds of the initial stop.'" *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999) (quoting *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996)); *see, e.g.*, *United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009) (finding no reasonable suspicion but nevertheless upholding a dog sniff where it did not unreasonably prolong defendant's detention).

Here, the traffic stop may have been extended past what was strictly necessary for the primary purpose of issuing a warning citation. From the time Campbell was stopped until the dog was deployed, 16 minutes elapsed, as compared to the "less than 10 minutes" found permissible in *Caballes*. 543 U.S. at 406. But Campbell does not prevail merely because there is some *de minimis* prolongation of a stop. Because "[t]he ultimate touchstone of the Fourth Amendment . . . is reasonableness," *Michigan v. Fisher*, 558 U.S. 45, 130 S. Ct. 546, 548 (2009) (internal quotations and citations omitted), courts must examine the specific facts of the particular stop. *Everett*, 601 F.3d at 491–94.

Even if, as Campbell alleges, Officer Duggan had no justification to extend the stop after the time he received the results of the records check, the officer had at that time developed a reasonable suspicion of criminal activity. Campbell's vehicle was emitting an unusually strong smell of air freshener, even accounting for the two air freshener trees visible in the car. Campbell was exhibiting visible signs of nervousness beyond what Officer Duggan was accustomed to seeing during traffic stops. Despite his nerves, Campbell had his registration and insurance information ready by the time Officer Duggan reached the car. Furthermore, Officer Duggan's calls to BLOC made him aware of Campbell's previous flight from police officers, his history of drug-trafficking along the same route, and his weapons and drug charges. This information, taken together, was sufficient for Officer Duggan to have formed reasonable suspicion to extend the stop and to use the brief and minimally invasive dog sniff to resolve his suspicions.

Although Campbell would have this court examine each of the factors leading to Officer Duggan's suspicions independently, the Supreme Court has directed courts to "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The Court counseled against a "divide-and-conquer analysis" that examines the factors allegedly leading to reasonable suspicion "in isolation from each other." *Id.* This type of analysis is precisely what Campbell advocates in this case. In a specific example, he attacks the officer's use of nervousness as one factor contributing to his suspicion, correctly noting that this court has found "nervousness inherently *unsuspicious*." *See United States v. Urrieta*, 520 F.3d 569, 577 (6th Cir. 2008). However, this court has also noted that "nervousness may be considered as part of the overall circumstances giving rise to a reasonable suspicion." *Id.* Because the totality of the circumstances is the key to the Fourth Amendment analysis in this type of case, nervousness, as well as all of the other factors cited by Officer Duggan, should be examined together. When viewed in this light, these factors provided Officer Duggan with reasonable suspicion to extend the stop to allow for the dog sniff and, upon the dog's signal, the search of the vehicle.

Campbell and the Government agree that, because Campbell was sentenced after August 3, 2010, he should be re-sentenced under the provisions of the Fair Sentencing Act. This case was held in abeyance pending the Supreme Court's decisions in *Dorsey v. United States*, 132 S.Ct. 2321 (2012) and *Hill v. United States*, 132 S.Ct. 759 (2012) (mem. op.). The effect of *Dorsey* on this case

is clear: "the Fair Sentencing Act's new, lower mandatory minimums . . . apply to the post-Act sentencing of pre-Act offenders," including those sentenced between the August 3, 2010 effective date of the Act and the November 1, 2010 effective date of the new Sentencing Guidelines. *Dorsey*, 132 S.Ct. at 2335. Campbell was sentenced on February 23, 2011—well after the effective date of both the Act and the Guidelines. Accordingly, we remand for re-sentencing under the FSA.