**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Ricardo PALOMINO, Defendant–
Appellant.**

No. 93–6364.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 16, 1996.

Decided Nov. 12, 1996.

Stuart J. Canale (briefed), Assistant U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Leslie I. Ballin (briefed), Ballin & Ballin, Memphis, TN, Defendant–Appellant.

Before: RYAN, SILER, and BATCHELDER, Circuit Judges.

SILER, Circuit Judge.

Defendant, Ricardo Palomino, appeals his jury conviction for possession with the intent to distribute cocaine. He contends that the district court erred in denying his motion to suppress the evidence. Palomino further argues that the evidence introduced by the prosecution was insufficient to support a finding of guilt. For the reasons that follow, we affirm.

## I. Facts

Mark Kellerhall, a patrolman with the Shelby County Sheriff's Department, was conducting a radar check on Interstate 240 around midnight on August 22, 1992. His radar indicated Palomino's car to be travelling at a speed of approximately forty-two miles per hour in a fifty-five miles per hour speed zone. The minimum speed in this area is forty-five miles per hour. Palomino was driving on the left-hand, innermost lane of traffic, and other vehicles were having to pass him in the right-hand lane. After Kellerhall pulled onto the interstate and followed Palomino, he noticed Palomino crossing two lanes of travel without using a signal and also saw Palomino weaving back and forth over the line separating the right-hand lane from the emergency lane. Suspecting that the driver might be intoxicated, Kellerhall pulled him over.

As the driver lowered the window of the car, Kellerhall smelled a strong chemical odor that he associated with ether-based cocaine. Palomino initially claimed ownership of the car and that he was going to visit someone in South Bend, Indiana. Later, Palomino indicated that the vehicle belonged to his aunt and uncle, who were thinking of moving to Indiana, and that he was driving it there for them. Kellerhall asked Palomino to step out of the car and questioned him

about drinking, ultimately determining that Palomino was not intoxicated.

Kellerhall requested that Palomino sit in the back of the patrol car while he checked Palomino's license and the registration of the vehicle. Kellerhall discovered that the registration was in order and that Palomino had previously been arrested for a drug offense and money laundering. While Kellerhall was issuing a warning citation, he asked Palomino if he was carrying any illegal goods, drugs, or weapons. When Palomino replied in the negative, Kellerhall asked if he would consent to a search of the car. Palomino signed an English–Spanish consent form. A search of the car revealed eleven kilograms of cocaine secreted in two hidden compartments.

## II. Procedural History

Later, Palomino was indicted and convicted for unlawful possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Before trial, he filed a motion to suppress the cocaine evidence. After a suppression hearing, the district court denied the motion to suppress. Palomino eventually was sentenced to a 121–month prison term.

## III. Discussion

### A. Suppression of the Evidence

■ We must accept the findings of fact upon which the district court relied in ruling on a motion to suppress unless those findings are clearly erroneous. *United States v. French,* 974 F.2d 687, 691 (6th Cir.1992), *cert. denied,* 508 U.S. 934, 113 S.Ct. 2403, 124 L.Ed.2d 304 (1993); *United States v. Anderson,* 923 F.2d 450, 454 (6th Cir.), *cert. denied,* 499 U.S. 980, 111 S.Ct. 1633, 113 L.Ed.2d 729 (1991). Palomino asserts three grounds for suppression of the cocaine evidence: the initial stop was without probable cause; the subsequent detention and questioning were constitutionally impermissible; and the consent to search was invalid.

### 1) The Initial Stop

Palomino argues that the evidence must be excluded as the "fruit" of an unreasonable seizure pursuant to *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963). He bases this assertion on a claim that Kellerhall did not have probable cause to stop the vehicle. Under Palomino's view of the case, Kellerhall's articulated reason for the stop—that Palomino was driving too slowly and weaving in traffic—was actually a pretextual reason to stop the car to search for drugs. He claims that Kellerhall really stopped the car because Palomino is of Mexican descent and because the car had Texas license plates, two characteristics which fit into the drug courier profile.

■ Under the test articulated in *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993) (en banc), *cert. denied,* — U.S. ——, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994), "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *See also Whren v. United States,* — U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (expressly adopting the same test for determining reasonableness of an automobile stop). The district court found, and Palomino conceded in the suppression hearing, that he was travelling approximately forty-two miles per hour in a fifty-five miles per hour speed zone. The court also found that Palomino crossed two lanes of travel at once, was straddling the right lane, and was weaving back and forth between the right lane and the emergency lane. These facts are supported by the testimony of Kellerhall, and although Palomino testified that he used his signals before crossing to the right-hand lanes of traffic, the court's finding that Palomino was driving in an erratic manner is not clearly erroneous. Based on these facts, Kellerhall did have probable cause to believe that a traffic violation had occurred.[1]

---

**1.** In addition to having probable cause to believe that Palomino was driving while intoxicated, Kellerhall also had probable cause to believe that other traffic violations had occurred. Tenn.Code Ann. § 55–8–123 provides, in part, that

[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:

■ *Ferguson* holds that, if there was probable cause, "it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." 8 F.3d at 391.· Therefore, even if Kellerhall was motivated by a suspicion that Palomino fit into a drug courier profile, the stop was not unreasonable because probable cause existed. The initial stop did not violate the Fourth Amendment.

### 2) The Detention and Questioning

■ Palomino claims that after Kellerhall determined that he was not intoxicated, ran a check on his driver's license and registration, and issued the citation, Kellerhall asked him whether he was carrying any illegal contraband. Palomino asserts that this was an unconstitutional detention and questioning. On the other hand, Kellerhall testified at the hearing that he asked Palomino about illegal contraband while he was issuing the citation. Magistrate Judge Breen credited the testimony of Kellerhall, and an appellate court is obliged to place a good deal of reliance upon the fact-finding capability of the judge who presided at the evidentiary hearing. We therefore accept this finding and conclude that Palomino was not detained any longer than the time necessary for the original purpose of the stop when Kellerhall asked him about the contraband and requested a consent to search. Therefore the brief questioning and request for consent to search were constitutionally permissible.

■ Although there was no detention beyond that which was necessary to effect the initial purpose of the stop, it is important to address Palomino's constitutional challenge in more detail in light of our recent holding in *United States v. Mesa*, 62 F.3d 159 (6th Cir.1995), a case which presented facts similar to those in the instant case. An ordinary traffic stop is analogous to a *"Terry* stop." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). Even if the initial stop is lawful, any subsequent detention must not be excessively intrusive. In analyzing the reasonableness

of a detention, we will consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). A temporary detention for questioning does not require a showing of probable cause if it is justified by specific and articulable facts that give rise to a reasonable suspicion of criminal activity. ·*Id.* at 21, 88 S.Ct. at 1879–80. We must consider the totality of the circumstances when determining whether reasonable suspicion was present. *United States v. Knox*, 839 F.2d 285, 289 (6th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989).

*Mesa* involved a claim that cocaine evidence seized during an automobile search should be suppressed because a police officer allegedly abused his discretion in detaining and questioning the defendant. The officer had pulled the defendant over for speeding. After the warning citation was issued and signed by the defendant, the officer asked the defendant if she had any pistols or drugs in the car. At the time, the defendant was locked in the back seat of the police vehicle and could not voluntarily leave without the assistance of the police officer. When she responded in the negative, the officer asked if he could look around. The defendant signed a consent-to-search form. After an extensive search, the officers discovered a partition in the trunk of the car. At this point, the defendant and her passengers indicated that they wished to leave, but they were not allowed to do so. *Id.* at 162.

We noted that "[o]nce the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Id.* The government tried to show that reasonable suspicion had arisen based on three grounds: 1) the defendant had told the officer that she was going to visit her grandfather who lived

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver

has first ascertained that such movement can be made with safety. . . .

in Kingsport, Tennessee, and her passenger had told the officer the grandfather lived in Nashville; 2) the defendant had said that her grandfather had suffered a heart attack, while her passenger, when asked whether the grandfather had had a heart attack, replied in the negative; and 3) the defendant had appeared nervous.

We disposed of the first ground on the basis that the videotape taken by the automatic camera in the police vehicle clearly showed that both the defendant and her passenger stated that the grandfather lived in Nashville. Therefore, the trial court's finding to the contrary was clearly erroneous. *Id.* The second discrepancy was insufficient to generate reasonable suspicion. Finally, although we noted that nervousness of a defendant is a factor which can lead to a finding of reasonable suspicion, nervousness alone is not a sufficient ground upon which to base a finding of reasonable suspicion. We concluded that, because the officer had no reasonable suspicion to prolong the detention after the warning citation was issued, the evidence discovered in the course of the subsequent search should have been suppressed. *Id.* at 163.

The facts of *Mesa* are distinguishable from the instant case. Primarily, in *Mesa* the purpose of the initial stop, i.e., the warning citation, had already been accomplished when the officer asked the defendant, who was not free to leave because she was still locked in the back seat of the patrol vehicle, whether she was carrying any contraband. Here, as we noted above, the court found that Kellerhall asked Palomino about any contraband he might have been carrying while he was issuing the warning citation. Thus, Palomino was not detained any longer than the time necessary for the original purpose of the stop when Kellerhall asked him about carrying illegal contraband and whether he would consent to a search.

Significantly, the questioning and request for a search in *Mesa* were not based on reasonable suspicion of criminal activity. Here, however, Palomino's inconsistent sto-

ries about the ownership of the car and the purpose of the trip, his nervousness, the investigation which revealed Palomino's past involvement in criminal activities, and the odor that Kellerhall smelled when Palomino rolled down his window aroused a reasonable suspicion of criminal activity justifying Kellerhall's inquiry whether Palomino was carrying contraband. Therefore, because Kellerhall's questioning and request for consent to search did not detain Palomino longer than was necessary for the original purpose of the stop, and because there was reasonable suspicion to conduct the brief questioning, there was no constitutional violation.

### 3) The Consent to Search

Absent probable cause and exigent circumstances, an officer cannot conduct a warrantless search without valid consent. The government carries the burden of proving that consent was voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973).

In the suppression hearing, the court found that Palomino's consent was voluntarily given. This court "must accept a finding of voluntary consent unless that finding was clearly erroneous." *United States v. French,* 974 F.2d 687, 693 (6th Cir.1992), *cert. denied,* 508 U.S. 934, 113 S.Ct. 2403, 124 L.Ed.2d 304 (1993). The voluntariness of Palomino's consent is to be determined from the totality of the circumstances. *Id.* Palomino claimed that Kellerhall told him that the consent form was something he "needed to sign" and that he did not feel free to leave without signing the form. However, the district court found that Kellerhall asked Palomino to sign the consent form only after Palomino had already given oral consent to search. At the suppression hearing, Palomino initially admitted that he read the consent form before signing it, although he later testified that he signed the document without reading it. There is no indication that Palomino did not understand what he was signing.[2] Palomino's driver's license had already

**2.** The consent form was written in English and Spanish. Palomino testified that he had completed post-graduate work in the United States.

He was articulate in responding to his attorney's questions both at the suppression hearing and at the trial without the aid of an interpreter. More-

been returned to him before he signed the consent form, the door to the officer's vehicle was not completely closed, and the officer's vehicle was not blocking Palomino's ability to leave. This evidence supports the court's conclusion that a reasonable person would have felt free to decline Kellerhall's request to consent or to sign the consent form. The finding that Palomino's consent was voluntary is not clearly erroneous.

## B. Sufficiency of the Evidence

The United States claims that this court should not review Palomino's challenge of the sufficiency of the evidence because he failed to make a motion for judgment of acquittal at the close of the evidence at trial. This claim has no merit, as the record of the proceedings shows that Palomino did make such a motion. Therefore this issue will be considered.

■ A jury conviction will not be overturned if there is substantial evidence on the record to support it. In making this determination, we must view the evidence in the light most favorable to the government, resolving all inferences which may reasonably be drawn from the evidence in the government's favor. *United States v. Tilton*, 714 F.2d 642, 645 (6th Cir.1983).

■ Palomino relies on *United States v. Pena*, 983 F.2d 71 (6th Cir.1993), for his contention that the government failed to prove beyond a reasonable doubt that he knew of the presence of cocaine in the vehicle or that he aided and abetted its possession. *Pena* is distinguishable from this case because Pena was a passenger in a vehicle that was carrying cocaine. She did not own, nor did she have control of, the vehicle. The *Pena* court held that "[g]uilt by association with the driver of the car, the act of being a passenger in the car, is insufficient [to establish knowing possession].". *Id.* at 73. Here, Palomino was not a passenger in a vehicle under the control of another party. Instead, due to Palomino's control and possession of the vehicle in which the cocaine was found

over, as his criminal record reveals, this was not Palomino's first encounter with law enforcement

(indeed, his exclusive possession of the vehicle during the trip to South Bend, Indiana), his inconsistent stories about the ownership of the vehicle and the purpose of the trip, his nervousness, and the odor associated with ether-based cocaine in the vehicle, a jury could have reasonably inferred that Palomino knowingly possessed the cocaine.

## IV. Conclusion

Kellerhall's initial stop of Palomino did not violate Palomino's Fourth Amendment right to be free from unreasonable seizures. The district court's finding that Palomino was not detained beyond the purpose of the initial stop is not clearly erroneous. Nevertheless, subsequent detention and questioning were justified because Kellerhall had reasonable suspicion of criminal activity. The search that ensued was constitutional because Palomino validly consented to it. Therefore, the seized evidence was admissible. The jury verdict of guilty was supported by sufficient evidence.

**AFFIRMED.**