**UNITED STATES of America, Plaintiff,**

**v.**

**Dejuan FLEMING, Defendant.**

**No. 01–CR–80162–DT.**

United States District Court, E.D. Michigan, Southern Division.

April 25, 2002.

Michael Bolotta, Asst. U.S. Attorney, Detroit, MI, for Plaintiff.

Richard Helfrick, Federal Defender, Detroit, MI, for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

ROSEN, District Judge.

## I. INTRODUCTION

Defendant Dejuan Fleming is charged in a one-count indictment for being a felon-in-possession of a firearm. The charge arises out of the search of his car after he was detained by Detroit Police officers on January 10, 2001 and questioned about having what appeared to be an altered temporary license tag in his rear window. This matter is presently before the Court on Defendant's Motion to Suppress Evidence. Counsel for the parties appeared for a hearing on Defendant's Motion on April 4, 2002 at which time, Defendant stipulated to the facts as presented by the Government in its March 2, 2002 Supplemental Response Brief with the exception of one fact alleged by the Government—whether, at the time the police officers first observed Defendant in his car on January 10, 2001, the motor of the car was running.[1] In light of this stipulation, the Court took the matter under advisement.

Having now had the opportunity to review and consider the parties' briefs and the applicable law, the Court is now prepared to rule on Defendant's Motion. This Opinion and Order sets forth the Court's ruling.

---

1. Defendant, however, conceded on the record that this fact was not a material one for purposes of his suppression arguments.

## II. *PERTINENT FACTS*

At approximately 5:10 p.m. on the evening of January 10, 2001, Detroit Police Officers Jerry Jones and James Woodside were patrolling in a marked Detroit Police Department patrol car. According to the officers, it was still light outside at the time and visibility was good. While they were headed north on Field Street approaching Preston Street, the officers observed a black Lexus stopped next to the curb on Field Street. According to the officers, the Lexus' engine was running. (They observed emissions coming from the car's exhaust.)[2] Defendant Dejuan Fleming was seated in the driver's seat of the Lexus.[3]

As their patrol car approached the Lexus, the officers observed what appeared to be an altered temporary license tag in the rear window of the car. It appeared to the officers that the date on the tag had been altered as it appeared that the expiration date "1–31–01" had been changed to read "3–31–01" with the "3" appearing to be written over the "1" with a different marker. The officers then saw Defendant look in his rear view mirror (apparently observing them), and then bend forward in the vehicle as if he might be hiding something under his seat. The officers then saw Defendant reach back towards the back of the car.

At this point, the officers were aware of the possibility of two crimes having been committed: operating a vehicle without a valid registration plate (a misdemeanor under M.C.L.A. § 257.255), and altering a public certificate with intent to defraud (a felony under M.C.L.A. § 750.248). Based

upon their experience, the officers also suspected that the car might be a stolen vehicle as they had in the past encountered invalid temporary tags used to conceal the fact that cars were stolen. Therefore, the officers decided to investigate.

They turned on their patrol car's lights and conducted a traffic stop of Defendant and the Lexus. Officer Jones approached the car on the driver's side and asked Fleming for his driver's license, registration and proof of insurance. Fleming stated that he did not have a driver's license, but had other paperwork relating to the car. Officer Jones then asked Fleming to step out of the vehicle and Fleming complied.

Once Fleming was out of the vehicle, Officer Jones placed him under arrest for operating a vehicle without a license, a violation of M.C.L.A. § 257.904a, which states, in pertinent part:

Any person, not exempt from license under this act, who shall operate a motor vehicle upon the highways of this state and who is unable to show that he or she has been issued a license to operate a motor vehicle by any state or foreign country valid within the 3 years preceding is guilty of a misdemeanor, and upon conviction shall be punished by not more than 90 days, or by a fine of not less than $50.00 more mor than $100.00, or both.

Officer Jones placed Fleming in the back of the patrol car, and pursuant to the policy of the Detroit Police Department, Officer Woodside began to conduct a brief search of the vehicle to ensure that there were no weapons in it prior to its impound.

---

2. As indicated, Defendant disputes this one fact. Defendant contends that the "ignition was off" at the time he was approached by the officers. [*See* p. 5 of Defendant's Memorandum in Support of Motion to Suppress.]

3. Later, the officers would discover that there was also an infant in a baby seat in the back seat of the car. Other than Fleming and the infant, there were no other individuals in the car.

At this time, Defendant Fleming, without being prompted, told Officer Jones that there was a gun inside of the car.

Under the driver's seat, Officer Woodside found a loaded, semi-automatic Ruger 9 mm handgun and an additional loaded magazine containing 10 bullets in a map pocket on the driver's side of the seat.

During a subsequent more thorough inventory search[4] of the Lexus after it was impounded, officers found a box of 9 mm ammunition (40 count), and a box of .380 ammunition (50 count).

On November 13, 2001, Fleming was indicted by a federal grand jury for being a felon-in-possession of a firearm based upon the semi-automatic Ruger found under the seat of Defendant's Lexus.

Subsequent to Fleming's indictment (apparently sometime between January 7 and March 7, 2002, i.e., after the instant Motion to Suppress was filed), the Government learned through further investigation that the temporary license tags on the Lexus were Louisiana temporary tags and had not been fraudulently altered, as Officers Jones and Woodside had thought. Further investigation revealed that the Lexus had been purchased from a dealer in Louisiana on January 3, 2001, i.e., a week prior to Defendant's arrest, and registered in Defendant's mother's name. The Government also has learned that temporary vehicle tags issued in Louisiana are valid for 60 days from the date the vehicle is purchased.

On December 19, 2001, Defendant Fleming moved to suppress his statement as to the presence of a firearm in the car and the firearm itself contending that the stop of his vehicle and his detention were not based upon probable cause or reasonable

suspicion of criminal activity and his statement and the officer's discovery of the firearm are fruits of the illegal stop and seizure.

## III. DISCUSSION

## A. THE OFFICERS HAD A REASONABLE SUSPICION THAT DEFENDANT WAS OPERATING A VEHICLE WITHOUT A VALID LICENSE TAG AND HAD ILLEGALLY ALTERED THE TEMPORARY TAG

 It is well-settled that police may briefly stop an individual for investigation if they have a "reasonable suspicion" that the individual has committed a crime. *Terry v. Ohio*, 392 U.S. 1, 28, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Houston v. Clark County*, 174 F.3d 809, 813 (6th Cir.1999). In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court held that "reasonable suspicion" entails only "some minimal level of objective justification" for making an investigative stop—that is "something more than an inchoate and unparticularized suspicion or 'hunch', but less than the level of suspicion required for probable cause." *Id.* at 7, 109 S.Ct. 1581. *See also, United States v. Hurst*, 228 F.3d 751, 757 (6th Cir.2000) ("While an officer making a *Terry* stop must have more than a hunch, 'reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.'")

██ Here, Officers Jones and Woodside had reasonable suspicion to believe that two violations had occurred which prompted their stop of Defendant: operating a vehicle without a valid registration plate, a

---

4. Police Department policy calls for an initial inventory search of the inside of a car for weapons prior to its being transported for impounding. Pursuant to the policy, a more thorough inventory search is to be conducted at a later time.

misdemeanor under Michigan law;[5] and altering a public certificate with intent to defraud, a felony.[6] The stop was not based upon a "hunch," but rather on the officers' observation of a temporary tag upon which a "3" had been marked over a "1" in the month space of the tag, which appeared to have been an attempt to extend the expiration date of the tag. While it ultimately turned out that the vehicle was lawfully registered in Louisiana, the officers' observations at the time would have given a reasonable officer cause to stop the vehicle to investigate the expiration date of the tag and whether it had been illegally altered. *See United States v. Bradshaw*, 102 F.3d 204 (6th Cir.1996), *cert. denied*, 520 U.S. 1178, 117 S.Ct. 1453, 137 L.Ed.2d 558 (1997) (officer's observation of altered temporary tag justified stop of automobile); *United States v. Sanders*, 196 F.3d 910 (8th Cir.1999) (officer had reasonable suspicion to conduct traffic stop of trailer where he reasonably but mistakenly believed the vehicle was manufactured after 1973 and therefore required a second red tail light). *See also, Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (motorist subject to seizure where there was an articulable and reasonable suspicion that the automobile was not lawfully registered).

■ Defendant contends that the officers lacked reasonable suspicion to stop him for operating a vehicle without a valid registration plate because he was not technically "operating" the vehicle at the time of the stop as the car was stationary. The Michigan Vehicle Code defines "operate" and "operating" as "being in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur," M.C.L. § 257.35a. Furthermore, the Michigan Supreme Court has expressly recognized that "a conscious person in a stationary vehicle might have 'actual physical control' and thus operate it" for purposes of the Michigan motor vehicle statutes. *See People v. Wood*, 450 Mich. 399, 403, 538 N.W.2d 351 (1995). In *Wood*, the court determined that, in the context of a drunk driving prosecution, a defendant who was found passed out and unconscious in a McDonald's drive-through lane with his car's engine running, the transmission in "drive," and his foot on the brake was "operating" a vehicle. *Id.* at 405, 538 N.W.2d 351.

Here, according to the officers, Defendant was conscious, the keys were in the ignition and the engine was running. Defendant was seated behind the wheel and Defendant was the only individual in the vehicle other than an infant in a baby seat in the rear seat of the car. Therefore, the Government maintains that Defendant was in actual physical control of the Lexus for purposes of being deemed to be "operating" a motor vehicle under the Michigan Vehicle Code.

---

**5.** M.C.L. § 257.255 provides in pertinent part:

(1) ... [A] person shall not operate, nor shall an owner knowingly permit to be operated, upon any highway, a vehicle required to be registered under this act unless there is attached to and displayed on the vehicle, as required by this chapter, a valid registration plate issued for the vehicle....

(2) ... [A] person who violates subsection (1) is guilty of a misdemeanor, punishable by imprisonment for not more than 90

days, or by a fine of not more than $100.00, or both....

M.C.L. § 257.255(1), (2).

**6.** M.C.L. § 750.248(1) provides, in pertinent part:

Any person who shall falsely make, alter, forge, or counterfeit any public record or certificate... with intent to injure or defraud any person, shall be guilty of a felony, punishable by imprisonment for not more than 14 years.

Defendant, however, disputes that the engine of the car was running at the time. Accepting Defendant's assertion that the ignition of the Lexus was off at the time the officers' approached the car, the Michigan Supreme Court's construction in *Wood* of Michigan's statutory definition of the term "operating" in the context of the OUIL statute may create some confusion in the interpretation of the term "operating" in the context of other provisions of the Michigan Vehicle Code. The *Wood* court's specific ruling was as follows:

We conclude that "operating" should be defined in terms of the danger the OUIL statute seeks to prevent: the collision of a vehicle being operated by a person under the influence of intoxicating liquor with other persons or property. *Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk.*

\* \* \* \* \* \*

Wood had put the vehicle in motion and in a position posing a significant risk of collision. The vehicle had not been returned to a position of safety. Only Wood's foot resting on the brake pedal kept the vehicle from moving forward. Were Wood, who had then become unconscious, to have slipped to the side, his foot might have moved off the brake, putting the vehicle in motion. Wood had not returned the vehicle to a position posing no risk of collision with other persons or property. We conclude that he continued to operate the vehicle when he was observed by the officers.

450 Mich. at 404–405, 538 N.W.2d at 353–354.

Subsequent Michigan decisions construing the *Wood* "operating" ruling have created further lack of clarity, particularly in those cases where the vehicle's motor is running or where the defendant has otherwise put the car "in a position posing a significant risk of causing a collision." *See e.g., People v. Lyon,* 227 Mich.App. 599, 577 N.W.2d 124, *app. denied,* 459 Mich. 882, 586 N.W.2d 745 (1998) (defendant not "operating" motor vehicle under M.C.L. § 257.35a where vehicle was stopped, the keys were outside of the ignition and defendant was outside the vehicle when confronted by the arresting officer); *People v. Sides,* 1998 WL 1992970 (Mich.App.1998) (unpublished decision; text available on WESTLAW) (*Wood* "operating" ruling held applicable where the arresting officer testified at trial that when he approached defendant's vehicle the motor of the vehicle was "racing" and defendant had his foot on the gas pedal); *People v. Skop,* 1997 WL 33344729 (Mich.App.1997) (unpublished decision; text available on WESTLAW) (although defendant's vehicle was in "park" and there was no risk of it being moved, the vehicle "posed a risk of collision" where car was pulled only partially onto the shoulder and remained partially in roadway; therefore, the court found that the vehicle had not ceased to be in operation within the meaning of the term "operate" as defined by the court in *Wood.*). *See also, Anderson v. Mehaidli,* 83 F.3d 422, 1996 WL 196219 (6th Cir. 1996) (unpublished decision; text available on WESTLAW) (applying *Wood* definition of "operating," appellate court affirmed district court's determination that defendant was not operating motor vehicle for purposes of application of Michigan's Negligent Operation of a Vehicle statute where the vehicle in question was parked in defendant's driveway and the engine of the van was not running at the time of the acts complained of).

However, even accepting Defendant's assertion that the engine of the Lexus was not running, the officers reasonably suspected not only that Defendant was operating a motor vehicle without a valid registration in violation of M.C.L. § 257.255 but also that the temporary registration certificate had been fraudulently altered in violation of M.C.L. § 750.248. Nothing in Section 750.248 requires a showing of "operating" a vehicle bearing an altered certificate as an element of a violation. *See* note 6, *supra.*

■ More importantly, as shown below, because the Court's inquiry in considering a motion to suppress evidence is governed by federal law, not state law, the fact that the officers' suspicion may not be supported by a narrow interpretation of state law does not render that suspicion valueless in the context of a federal suppression analysis. Federal law requires only that the officers have a "reasonable suspicion" that the individual is committing or *has committed* a crime. *See Houston v. Clark County, supra,* 174 F.3d at 813; *United States v. Palomino,* 100 F.3d 446, 449 (6th Cir.1996). *See also, United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993) (en banc), *cert. denied,* 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47 (1994) (holding that so long as an officer has probable cause to believe that a traffic offense has occurred or is occurring, resulting stop is not unlawful and does not violate Fourth Amendment). Reasonableness is measured in objective terms by examining the totality of the facts and circumstances within the officers' knowledge at the time of the stop. *Terry v. Ohio, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1879–80. In fact, it must be emphasized here that there has been no interpretation of the meaning of the word "operate" in the context of the statute at issue here, M.C.L. § 257.255, and the policies which underlie the interpretation in *Wood*

and the term "operating" in the context of the OUIL statute are not particularly implicated in the context of an analysis of M.C.L. § 257.255, which is presumably directed at policing and preventing vehicle registration fraud. Thus, the issue of "physical control" of a vehicle might well be interpreted differently as applied to this statute.

However, the Court need not interpret the precise scope of M.C.L. § 257.255 here, and this point only renders the important inquiry here more cogent: The focus of the Court's inquiry here is on the reasonableness of the officers' suspicion at the time of the stop. The fact that a posthoc narrow interpretation of a statute may not have put the Defendant's conduct within the zone of legal culpability does not mean that the officers' suspicion was not reasonable. Here, the officers had a reasonable, articulable suspicion that Defendant *had operated* a motor vehicle to get to the place where they encountered him without a valid registration and *had fraudulently altered* the registration tag. This is sufficient to justify the initial investigatory stop of Defendant in the Lexus which was parked on the roadway.

## B. DEFENDANT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE

The Fourth Amendment requires that the officers who effect an arrest or search act reasonably. *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996); *Terry v. Ohio, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1879–80. As noted above, reasonableness, in turn, is measured in objective terms by examining the totality of circumstances. *Robinette, supra. Terry, supra.* Here, the issue is whether an objectively reasonable officer would have believed that he had probable cause to arrest Defendant Fleming on Jan-

uary 10, 2001 for operating a vehicle without a driver's license.

■ Probable cause to arrest exists where "the facts and circumstances within the officer's knowledge... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). *See also, Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (probable cause to arrest is present when the facts and circumstances within the officers' knowledge "were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.")

■ The Supreme Court has held that when an officer has probable cause to believe that an individual has committed even a very minor criminal offense, he may, without violating the Fourth Amendment, arrest the offender. *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001). In *Atwater,* the Supreme Court found that the petitioner's warrantless arrest for violating the Texas seat belt law passed constitutional muster. The Court explained:

> Atwater's arrest satisfied constitutional requirements. There is no dispute that Officer Turek had probable cause to believe that Atwater had committed a crime in his presence. She admits that neither she nor her children were wearing seat belts as required by Tex. Tran. Code Ann. § 545.413 (1999). Turek was accordingly authorized (not required, but authorized) to make a custodial arrest without balancing costs and benefits or determining whether or not Atwater's arrest was in some sense necessary.

121 S.Ct. at 1537. *See also United States v. Reed,* 220 F.3d 476 (6th Cir.2000), *cert.*

*denied,* 531 U.S. 1103, 121 S.Ct. 842, 148 L.Ed.2d 722 (2001). (probable cause supported warrantless arrest for misdemeanor trespassing).

■ Here, after making a lawful traffic stop of Defendant Fleming, Fleming admitted to the officers that he did not have a driver's license. Therefore, at that point in time, Officer Jones had probable cause to arrest Defendant for operating a vehicle without a driver's license in violation of the Michigan Vehicle Code, M.C.L. § 257.904a. As noted above, that Officer Jones did not see Defendant actually "operating" the vehicle is immaterial for purposes of determining the validity of his arrest under the U.S. Constitution.

The Sixth Circuit's decision in *United States v. Wright,* 16 F.3d 1429 (6th Cir.), *cert. denied,* 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994) well illustrates this point. As the *Wright* court explained:

> [T]he appropriate inquiry for a federal court considering a motion to suppress evidence... is whether the arrest, search, or seizure violated the Fourth Amendment. The fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution are not offended. This is so because the exclusionary rule is only concerned with deterring Constitutional violations. Furthermore, this rule promotes uniformity in federal prosecutions. Indeed, it would be strange for the results of federal prosecutions to depend on the fortuity of the defendant's being arrested in one state or another.

16 F.3d at 1437.

Thus, even if Defendant Fleming's arrest would not have been lawful under Michigan law because the officers did not see Fleming actually "operating" the Lexus, as that term was defined by the Michi-

gan Supreme Court in *People v. Wood, supra,* it does not render Fleming's arrest unlawful under the Fourth Amendment.

In *United States v. Chapel,* 111 F.3d 132, 1997 WL 178878 (6th Cir.1997), the Sixth Circuit addressed the precise issue of a defendant's arrest for operating a motor vehicle without a license in violation of Michigan law in the context of a motion to suppress under facts substantially similar to those presented in the instant action. Although *Chapel* is an unpublished decision, the factual similarity between that case and the instant action render it particularly instructive.

In *Chapel,* River Rouge police officers while on routine patrol came upon the defendant in a car that was lawfully parked on an otherwise deserted street. The officers had not seen the vehicle arrive at the parked position and never saw the vehicle move in any way. The police officers pulled in behind the vehicle intending only to tell the occupants that they were in a drug trafficking area and that if they had no legitimate business, they should move on.

Looking into the driver's side window, one of the officers saw the defendant sitting in the driver's seat and a juvenile male sitting in the passenger seat. The officer recognized the defendant from a prior drug arrest three or four years earlier and remembered that he had previously stopped him for driving with a suspended license. The officer knew that the defendant did not live in the neighborhood where the car was parked and he knew that the juvenile did not live on that street, either.

The officer initially told the defendant to drive away, but after the defendant made a sudden motion with his right hand, the officer asked him for his driver's license. When the defendant admitted that he did not have a driver's license, he was taken into the police car and after a computer check confirmed that the defendant had no license, he was arrested for operating a vehicle without a license in violation of Michigan law. A post-arrest search of the passenger compartment of the vehicle and of the defendant's person produced crack cocaine, a pistol, heroin and a false Michigan driver's license.

After being indicted by a federal grand jury, the defendant moved to suppress the evidence seized from his car and person when he was arrested. The district court granted the motion to suppress finding that because the defendant's arrest for "operating" a motor vehicle without a license was not lawful as a matter of Michigan law, the arrest and subsequent search violated the Fourth Amendment of the U.S. Constitution.

The Sixth Circuit reversed. In so doing, the appellate court reviewed *United States v. Wright, supra,* as well as a number of other decisions in this Circuit and in a number of other circuits, and found that nine circuits have adopted the principle enunciated in *Wright* that the fact that an arrest may have violated state law is irrelevant in the context of a federal motion to suppress and that the only standard under which the officers' warrantless search of the defendant and his vehicle was to be evaluated was the Fourth Amendment standard of whether the arrest was supported by probable cause to believe that the defendant was committing or *had committed* a state or federal offense.

Relying upon the numerous cases in which the federal courts have justified warrantless arrests if, at the time of the arrest, the arresting officers had probable cause to believe that an offense *has been,* is being, or will be committed, the *Chapel* court determined that defendant's arrest in that case for "operating a motor vehicle

without a license" was supported by probable cause. The court explained:

> [The cases discussed] make clear that an officer may happen upon the scene of a crime after the fact and, without seeing the actual crime, have probable cause to believe that a crime has been committed. Numerous courts have determined that probable cause does not require the officer actually to see a violation of the law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that right created by state law prohibiting warrantless arrest for misdemeanor not committed in arresting officer's presence is not grounded in Fourth Amendment and probable cause does not require that officer actually see violation of law)....
>
> In the case at bar, ... the officer heard directly from the defendant that he did not have a driver's license.... The evidence in the record is uncontroverted that Officer Black asked the defendant to sit in the police car while he checked the computer to confirm that defendant did not have a license, that he got such confirmation, and it was then that he arrested the defendant.
>
> We hold that "at that moment the facts and circumstances within [Officer Black's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner *had committed* or was committing an offense," [B*eck v.*] *Ohio*, 379 U.S. at 91, 85 S.Ct. 223, namely, driving without a license. The objectively reasonable officer easily could have concluded that the defendant had driven the car to the place where the officers found him. Officer Black had probable cause to believe an offense had been committed, and his arrest of the defendant was valid under

the Fourth Amendment. The district court erred in holding to the contrary. 1997 WL at *3–4, 111 F.3d 132 (emphasis in original).

The foregoing principles and precedent establish that, in this case, Officers Jones and Woodside had probable cause to arrest Defendant Fleming for operating a vehicle without a license. Officer Jones asked Defendant for his license and Defendant told him that he did not have one.[7] The keys were in the ignition of the car at the time and there was an infant strapped in a child seat in the rear of the car. It was, thus, reasonable for the officers to conclude that Defendant had driven the Lexus (i.e., had operated the vehicle on a roadway) without a license to the place where they came upon it. The officers, therefore, had probable cause to arrest Defendant for operating a vehicle without a driver's license in violation of M.C.L. § 257.904a.

## C. *THE SEARCH OF THE LEXUS WAS A LAWFUL SEARCH INCIDENT TO ARREST*

 It is well-established that an officer may conduct a warrantless search of the passenger compartment of a car, including any containers therein, following a lawful custodial arrest of an occupant of the vehicle. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Patterson*, 993 F.2d 121, 122–23 (6th Cir.1993). The Supreme Court has further held that when a car is impounded, officers may conduct an inventory search of the car, including any containers therein, so long as the search is done (1) pursuant to standard police policy; (2) not done in bad faith; and (3) not done for the sole purpose of uncovering evidence of criminality. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93

---

7. In fact, Defendant's license had been suspended.

L.Ed.2d 739 (1987); *United States v. Harvey*, 16 F.3d 109 (6th Cir.), *cert. denied*, 513 U.S. 900, 115 S.Ct. 258, 130 L.Ed.2d 178 (1994).

 Here, as explained above, the officers made a lawful arrest of Defendant, an occupant of the vehicle searched. Therefore, the search of the inside of the vehicle that revealed the loaded firearm and magazine was a lawful "search incident to arrest."

The search is also justified as an inventory of a vehicle that was being impounded. Officer Woodside, pursuant to police policy, conducted an initial inventory search of the vehicle to determine if there were any weapons in the car prior to its transportation and impounding. It was during this search that he found the loaded firearm and magazine.

D. *DEFENDANT'S STATEMENT THAT THERE WAS A GUN IN-SIDE THE CAR WAS VOLUNTARY*

 As indicated above, after Defendant was placed under arrest and placed in the squad car, he told Officer Jones that there was a gun in the car. According to the officers, this statement was "unprompted," not elicited by questioning. There was, therefore, no "interrogation," to warrant suppression of this statement under the Fifth Amendment. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (in order for *Miranda* to apply, there must be an "interrogation" which encompasses "not only... express questioning, but also... any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect"); *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir.1997) (where a defendant makes a voluntary statement without

being questioned or pressured by an interrogator, his statements are admissible despite the absence of *Miranda* warnings); *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984) (statements that are voluntary and spontaneous when the defendant is under no compulsion to speak, are deemed to have been obtained independent of any supposed interrogation); *United States v. Montano*, 613 F.2d 147, 149 (6th Cir.1980) (statement made by defendant after he had been arrested and taken into custody upon overhearing the agents were discussing among themselves the question as to whether the other adults should be placed under arrest to the effect that "They don't know anything about it. Leave them here. It's my stuff," held to constitute volunteered statements not within the purview of the *Miranda* guidelines). *See also, United States v. Blackmon*, 142 F.3d 437, 1998 WL 109992 (6th Cir.1998) (unpublished decision; text available on WEST-LAW) (although defendant was in custody at the time, his statement "Okay, I have a gun," was voluntary and not compelled by questioning and therefore, did not implicate *Miranda* ).

E. *INEVITABLE DISCOVERY*

 Even if there were a *Miranda* violation here, Officer Woodside was already searching Defendant's vehicle when Defendant told Officer Jones that there was a gun in the car. The gun inevitably would have been discovered during the lawful "search incident to arrest" or "inventory search." The "inevitable discovery" doctrine provides that evidence found in an unlawful search may be admitted if the government can show that the evidence inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81

L.Ed.2d 377 (1984); *United States v. Kennedy,* 61 F.3d 494 (6th Cir.1995), *cert. denied,* 517 U.S. 1119, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996). *See also, United States v. Leake,* 95 F.3d 409, 412 (6th Cir.1996); *United States v. Brown,* 69 F.Supp.2d 925, 933–34 (E.D.Mich.1999). By application of the inevitable discovery doctrine here, there is no reason to suppress evidence of the firearm found in the car even if Defendant's statement was made in violation of *Miranda.*

### CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Suppress Evidence is DENIED.