NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0452n.06
Filed: May 31, 2005

No. 04-5589

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| STEVE E. FAULKNER, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant | ) | |

Before: BOGGS, Chief Judge; RYAN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The defendant, Steve Faulkner, challenges on appeal the district court's denial of his motion to suppress evidence discovered during a traffic stop initiated by the Memphis Police Department. Faulkner was charged with one count of being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g), based on the discovery of a firearm during the stop. Because the officers had probable cause to initiate a traffic stop of Faulkner's vehicle, and because Faulkner voluntarily consented to the search, we affirm the criminal judgment against Faulkner.

I. Background

On February 10, 2002, at approximately 6:10 p.m., Faulkner was driving his car on a two-lane road in a residential area of south Memphis. Faulkner was accompanied by one passenger, Roderick Robinson. Officers Schafer and O'Brien, of the Memphis Police Department, were

traveling in an unmarked police car directly behind Faulkner.  Officer Schafer claims that, while traveling southbound on the residential street, Faulkner inexplicably stopped his car near the middle of the road.  Officer Schafer testified that, in order to pass Faulkner's car, Schafer would have had to drive in the opposing lane of traffic.  Officer Schafer claims that Faulkner remained stopped for approximately 15-20 seconds, after which time the officers turned on their emergency lights and began to exit the car.  Officer Schafer testified that, as the officers approached Faulkner, Faulkner quickly exited his car, appeared nervous and agitated, and began to walk away from the car and from the officers.  Based on these observations, Officer Schafer feared that Faulkner was going to "flee or fight," and he accordingly placed Faulkner in the backseat of his police car.

The officers then approached Faulkner's vehicle and began questioning Faulkner's passenger, Roderick Robinson.  In response to the questioning, Robinson stated that he had known Faulkner since childhood, but was unable to recall Faulkner's last name.  Robinson also told the officers that he and Faulkner had been returning from Blockbuster; however, the officers did not see tapes or store bags.[1]  Officer Schafer further testified that Robinson  also appeared nervous and agitated and that he failed to answer questions about an open box of sandwich baggies that was located between his legs.[2]  Schafer testified that he was suspicious of the situation based on his interaction with Faulkner and Robinson, and based on the fact that the stop occurred in a high-crime

---

[1]The lack of tapes or bags from Blockbuster is consistent with Faulkner's claim that he and Robinson had been returning from dropping off a tape at the video store.

[2]Officer Schafer testified that baggies are commonly used to package illegal narcotics.

area known for drug trafficking. The officers then proceeded to place Robinson in the back seat of the police car with Faulkner.

Officer Schafer subsequently activated a tape recorder housed in the trunk of the police car, which taped Robinson and Faulkner's conversation in the back seat. Neither Faulkner nor Robinson knew they were being recorded. During this time, Officer O'Brien began the process of running a check on Faulkner's license. While Officer O'Brien was running the records check, Officer Schafer asked Faulkner for consent to search the car. According to the audio tape, Faulkner responded "I mean you search it. I ain't got nothing in the car." Officer Schafer responded, "Okay. Thank you." Schafer then asked Faulkner, "You own the car, right?" Faulkner confirmed that he was the owner. Officer Schafer then began searching the car.

After a few minutes of searching the car, Officer Schafer returned to the police car to listen to the tape recording of Faulkner and Robinson's conversation. On the audiotape, Robinson asked Faulkner if the pistol was in the car. Faulkner stated that the pistol was "in the console." After listening to this conversation, Officer Schafer resumed his search of Faulkner's car and located a bag with seven marijuana cigarettes and a Rossi .38-caliber revolver in the console. According to Officer Schafer, when he returned to the police car with the items, Faulkner stated "That's my stuff."[3] Faulkner was then arrested for obstructing traffic, driving on a suspended license, and possessing marijuana with intent to sell. Faulkner's car was subsequently towed from the scene.

---

[3]This statement was not captured on audiotape.

Faulkner disputes many of the facts related to the search. Faulkner claims that the officers followed his car for several blocks, and that he only stopped his car when the police officers turned on their emergency lights. Faulkner also claims that he did not stop his car in the middle of the road, but rather that he stopped the car directly beside the curb, as evidenced by Robinson's testimony that he stepped directly from the car onto the curb. Faulkner and Robinson also claim that the search of Faulkner's car began before Officer Schafer ever asked for consent. Finally, despite the existence of the audiotape, Faulkner claims that he did not consent to the search. In explaining his apparent consent on the tape, Faulkner claims that his statement, "I mean you search it. I ain't got nothing in the car," simply meant that, hypothetically, if the officers did search the car, they wouldn't find anything.

Faulkner moved to suppress, and the motion was referred to a magistrate judge. After an evidentiary hearing on the matter, the magistrate judge issued a report recommending that the motion to suppress be denied. The magistrate judge's report and recommendation was adopted by the district court and an order denying the motion to suppress was issued. On January 9, 2004, Faulkner entered a conditional plea of guilty to one count of being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g). The plea agreement allowed him to appeal the denial of his motion to suppress.

**II. Analysis**

Faulkner challenges the district court's denial of his motion to suppress. Specifically, Faulkner claims that the evidence seized from his vehicle should be suppressed because: (1) the police were not justified in stopping his car; (2) he was illegally detained in the backseat of a police cruiser; and (3) he did not voluntarily consent to the search of the vehicle. Each of these contentions, however, lacks merit.

The court reviews *de novo* the district court's legal conclusions in a suppression hearing, and reviews the factual findings for clear error. *United States v. Bailey*, 302 F.3d 652, 656 (6th Cir. 2002). Whether consent to a search was voluntarily given is a question of fact. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). Accordingly, the district court's determination that a defendant voluntarily consented to a search will only be reversed if it is clearly erroneous. *Id.* In addition, because the district court denied the motion to suppress, the court of appeals must view all evidence in the light most favorable to the government. *Bailey*, 302 F.3d at 656.

**A. The Traffic Stop of Faulkner's Car**

Faulkner claims that the evidence obtained during the traffic stop of his vehicle should be suppressed because the police were not justified in making the stop. However, because there was probable cause to believe that Faulkner was violating a traffic law, the officers were justified in stopping Faulkner's car.

Stopping a vehicle and detaining its occupants is considered a seizure for purposes of the

Fourth Amendment. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). A traffic stop

is therefore subject to the constitutional requirement that it not be "unreasonable" under the totality

of the circumstances. *Whren v. United States*, 517 U.S. 806, 809 (1996). "As a general matter, the

decision to stop an automobile is reasonable where the police have probable cause to believe that

a traffic violation has occurred." *Id*.

In this case, the stop of Faulkner was reasonable because there was probable cause to believe

that a traffic violation had occurred. A Memphis City Ordinance states that

> (a) No driver shall stop, stand or park a vehicle abreast of another vehicle parallel to
> the curb or in any other manner so as to interrupt or interfere with the passage of
> other vehicles on any street except in the case of public emergency or when directed
> by a police officer.
>
> (b) It shall be unlawful to leave any vehicle standing in any street when such vehicle
> constitutes a hazard to public safety or an obstruction to traffic.

MEMPHIS, TENN., CODE § 21-139. Officer Schafer testified, and the district court found, that

Faulkner "inexplicably stopped his car towards the middle of the road." Officer Schafer testified

that Faulkner remained stopped in the middle of the road for approximately 15-20 seconds before

the officers initiated the stop and that maneuvering around Faulkner's car would have required

driving in the other lane of traffic. Shafer testified that driving in the other lane of traffic would

have been "very unsafe." Although Faulkner claims that he did not stop the car until the police

pulled him over, and that, when he did stop, he pulled his car directly beside the curb, the magistrate

judge found that Faulkner's version of events was not credible. There is not sufficient contrary

evidence to render the magistrate judge's credibility determination clearly erroneous. Therefore, taking Officer Schafer's version of events as true, there was probable cause to believe that Faulkner was violating Memphis Ordinance § 21-139. Accordingly, the initial stop of Faulkner's vehicle was justified.

## B. Faulkner's Detention in the Police Car

Faulkner claims that, even if the initial stop of his vehicle was justified, the officers' decision to detain him in the back seat of the police cruiser during the stop was an unlawful seizure under the Fourth Amendment. Because Faulkner's brief detention in the back seat of the police cruiser was justified by his suspicious behavior after the traffic stop, and because the detention does not appear to have lasted longer than was necessary to run Faulkner's license and issue a citation, his detention was not unreasonable under the Fourth Amendment.

A traffic stop is "analogous to a '*Terry* stop.'" *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996). A valid traffic stop must be justified at its inception, and any detention must be related in scope to the circumstances that justified the interference in the first place. *Id.* Accordingly, "[e]ven if the initial stop is lawful, any subsequent detention must not be excessively intrusive." *Id.* Because the initial stop of Faulkner's car was justified, the relevant question therefore becomes whether the detention exceeded the purpose and objective of the stop. *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996).

The detention of Faulkner was well within the purpose and objective of the initial search. Faulkner was initially stopped for violating a traffic ordinance. Faulkner was not detained longer than was necessary for the police to perform a records check of Faulkner's vehicle and license. His detention was therefore well within the bounds of the initial traffic stop. *See United States v. Wellman,* 185 F.3d 651, 656 (6th Cir. 1999) (citing *Bradshaw*, 102 F.3d at 212).

Furthermore, the placement of Faulkner in the police cruiser was reasonable. Officer Schafer testified that he placed Faulkner in the police cruiser because, based on Faulkner's behavior, Schafer had concerns that Faulkner would either flee the scene or attempt to fight an officer. A defendant's "nervous" and "agitated" behavior, while not significant enough to warrant detention exceeding the scope of the original stop, *see United States v. Mesa*, 62 F.3d 159, 162-63 (6th Cir. 1995), can justify detention in a police cruiser for a duration not exceeding the bounds of the initial stop. *See Bradshaw*, 102 F.3d at 212 nn.16 & 18 (stating that a defendant's behavior in exiting his vehicle and approaching the officer in a "nervous" and "jittery" manner provides a basis for detention based on safety concerns); *United States v. Calderon-Valenzuela*, Nos. 98-4353 & 98-4355, 2000 WL 571953, at * 3 (6th Cir. May 3, 2000) (finding that "[a] suspect may be detained in a police cruiser until the purposes of an initial traffic stop are completed"). Accordingly, the placement of Faulkner in the police cruiser during the time period necessary to run a check of his license was reasonable.

## C. Faulkner's Consent to the Search of his Vehicle

Faulkner claims that the evidence from the search of his car should be suppressed because he did not intend to give the police permission to search his vehicle and because, in any event, he did not give his consent voluntarily. The district court found that Faulkner intended to give the police permission to search his vehicle, and that Faulkner gave his consent voluntarily. These determinations were not clearly erroneous.

Faulkner first argues that his response to Officer Schafer's request to search the vehicle—"I mean you search it. I ain't got nothing in the car"—was not meant to give Officer Schafer consent to search, but rather, only as a statement that, hypothetically, if the officers were to search the car, they would find nothing illegal.[4] The magistrate judge, however, found that when making the statement, "I mean you search it. I ain't got nothing in the car," Faulkner expected Schafer to perform a search of the vehicle. In so deciding, the magistrate judge noted that after Schafer began searching the car, Faulkner did not protest. Instead, Faulkner "continued to quietly discuss with Robinson whether the gun was in the car and whether the officers would find it." The finding of the magistrate judge on this matter is in accord with the common-sense interpretation of Faulkner's words, and was not clearly erroneous.

---

[4]Faulkner claims that the officers began searching his car before asking Faulkner to consent. The magistrate judge, however, found this claim not to be credible, in part because the audiotape contains no protests about, or references to, any illegal search. This factual finding was not clearly erroneous, and the court accordingly is bound to accept it on appeal.

Faulkner next argues that, even if he gave did give permission for the officers to search his car, such consent was not given voluntarily. "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973). A lower court's finding that consent was given voluntarily is a factual finding that can only be overturned if clearly erroneous. *Erwin*, 155 F.3d at 822.

In arguing that the magistrate judge's finding of voluntary consent was clearly erroneous, Faulkner relies heavily on this court's decision in *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995). *Mesa*, however, is distinguishable from the present case. In *Mesa*, the defendant was detained in the back seat of a police car and asked to consent to a search *after* the initial purpose of the traffic stop was completed. However, in this case, Faulkner was detained and asked for his consent to search the vehicle while the officers were running a records check and, therefore, *before* the initial purpose for the traffic stop was completed. This court has found that consent given under similar circumstances was voluntary. *See Wellman*, 185 F.3d at 656 (holding that, although the defendant was detained in a police cruiser, "any consent to search voluntarily given during this time would justify a search"). Thus, the mere fact that Faulkner's consent was obtained while he was detained in the police cruiser does not render his consent *per se* involuntary.

The magistrate judge found that, based upon the totality of the circumstances, Faulkner's consent was given voluntarily. In so finding, the magistrate noted that Faulkner's age and intelligence level, as well as his familiarity with criminal procedure and his constitutional rights

(based upon his prior arrests), indicated that Faulkner had the ability, and was aware of his right, to refuse consent. Furthermore, the court found that there was no evidence of coercion or intimidation by the officers. The conclusion of the magistrate judge that Faulkner's consent was voluntarily given, based upon the factors listed above, was not clearly erroneous and will not be overturned on appeal.

## III.  Conclusion

The initial stop of Faulkner's car was based on probable cause that he had violated a traffic ordinance and his detention in the back seat of the police cruiser was reasonable under the circumstances. Furthermore, the search of Faulkner's car was valid given that Faulkner voluntarily consented to the search.

For the foregoing reasons, the criminal judgment against Faulkner is AFFIRMED.